ORIGINAL

Thomas J. Brady, Esq. (SBN 185768)
F. Russell Wilson, Esq. (SBN 185591)
DONALDSON & CORNWELL
15708 Pomerado Road, Suite N-109
Poway, California 92064
(858) 487-9420 tel.
(858) 487-9424 fax
kimcditlaw@aol.com

Attorneys for Plaintiff

FILED
2007 OCT 17 PM 1:56
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE WESTERN STATES INCOME SECURITY FUND<br><br>Plaintiff,<br><br>vs.<br><br>VANARD LITHOGRAPHERS, INC.<br><br>Defendant. | '07 CV 2009 L CAB<br>CASE NO.<br><br>COMPLAINT FOR DAMAGES |

The Board of Trustees of the Western States Income Security Fund ("Plaintiff" or "Fund") for their complaint against Defendant, Vanard Lithographers, Inc. ("Defendant") avers as follows:

**Nature of the Action**

1. This is a civil action to recover delinquent contributions due under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq. ("ERISA"), and

interest, liquidated damages and reasonable attorney's fees and costs.

**Jurisdiction**

2. The Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §1132 and 29 U.S.C. §1145.

**Venue**

3. Venue lies in the District Court for the Southern District of California under ERISA, 29 U.S.C. §1132(e)(2) since, at all relevant times, Defendant's principal place of business is located in San Diego County, California.

**Parties**

4. Plaintiff is the board of trustees for an employee pension benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2)(A), and a multiemployer plan within the meaning of ERISA, §1002(37)(A).

5. The Board of Trustees to the Fund are fiduciaries of the Fund pursuant to 29 USC §1002(21)(A).

6. Defendant is a California corporation and an employer in an industry affecting commerce, with a business address of 3220 Kurtz St., San Diego, California 92110.

**Facts**

7. At all times relevant to this action, Defendant was and is a party to a collective bargaining agreement ("Labor Agreement") with the Graphics Communications Union District Council No. 2. Section 42 of the Labor Agreement has operated to

extend the validity of the Labor Agreement through September 30, 2008. A true and correct copy of the Labor Agreement is attached hereto as Exhibit 1.

8. In the Labor Agreement, Defendant agreed to make contributions to and be bound by the terms of the Western States Income Security Fund Pension Trust Agreement ("Trust Agreement"). A true and correct copy of the Western States Income Security Fund Pension Trust Agreement (Restated and Amended as of January 1, 1991) is attached hereto as Exhibit 2.

9. Under the Labor Agreement and Trust Agreement, Defendant agreed:

a) To make timely monthly contribution payments to the Fund on behalf of employees who had worked or been paid for the qualifying number of hours during the reported month;

b) To submit corresponding monthly contribution reports to the Fund so that contributions can be allocated accurately; and

c) To pay liquidated damages and interest on delinquent contributions until the dates the contributions are paid in full, and to pay reasonable attorneys' fees and costs expended by the Fund to collect amounts due as a consequence of Defendant's failure to comply with its contractual obligations described in subparagraphs (a) and (b).

10. Defendant has failed to make contribution payments to the Fund for the months of July, August and September of 2007, as required by the Labor Agreement and Trust Agreement, and has thus become delinquent.

**Claims for Relief**

**Count 1**

**Contributions Under ERISA**

11. The allegations of paragraphs 1 through 9 are incorporated by reference as if fully restated.

12. Defendant has, without justification or excuse, failed to pay the estimated sum of $5,816.79 in contributions to the Fund owed for the months of July, August and September of 2007, in violation of the Labor Agreement, the Trust Agreement, and 29 U.S.C. §1145. Per the Trust Agreement, the Fund is also owed liquidated damages and interest for the Defendant's nonpayment of contributions through September 30, 2007, in an amount to be determined during the pendency of this action.

13. The Fund has been damaged by Defendant's violation of 29 U.S.C. §1145.

WHEREFORE, Plaintiff requests that the Court:

a) Enter judgment against Defendant in favor of Plaintiff for the estimated sum of $5,816.79 (exact amount to be determined during the pendency of this proceeding), plus any additional amounts which are found to be due and owing during the pendency of this action, including

interest at the rate prescribed by 26 U.S.C. §6621, liquidated damages and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment; and

b) Grant such other further relief, legal or equitable, as may be just, necessary or appropriate.

Dated 10-16-07

DONALDSON & CORNWELL

By [signature]

Thomas J. Brady (SBN 185768)
DONALDSON & CORNWELL
15708 Pomerado Road, Suite N-109
Poway, CA 92064

Attorney for Plaintiff,
Board of Trustees of the
Western States Income Security Fund

Labor Agreement

between

Vanard Lithographers, Inc., San Diego, CA

and

Graphic Communications Union District Council No. 2

**EXHIBIT 1**

ORIGINAL

# LABOR AGREEMENT

between

**VANARD LITHOGRAPHERS, INC.**
**San Diego, CA**

and

**GRAPHIC COMMUNICATIONS UNION**
**DISTRICT COUNCIL NO. 2**

**LOCAL 388M**
**AFL-CIO**

**October 1, 2004 - September 30, 2006**

# TABLE OF CONTENTS


| Section | | Page |
|---|---|---|
| 1 | Recognition and Purpose | 1 |
| 2 | Union Security | 1 |
| 3 | Union Dues Check-Off | 2 |
| 4 | Credit Union Check-Off | 2 |
| 5 | Hours of Work and Overtime | 2 |
| 6 | Shift Premium | 4 |
| 7 | Holidays | 4 |
| 8 | Vacations | 4 |
| 9 | Military Status | 6 |
| 10 | Management Rights | 6 |
| 11 | No Strike or Lockout | 6 |
| 12 | Bulletin Board | 6 |
| 13 | Union Representation | 6 |
| 14 | Separability | 6 |
| 15 | Equal Employment Opportunity | 7 |
| 16 | Drug Free Work Place | 7 |
| 17 | Call in and Reporting Pay | 7 |
| 18 | Working Out of Classification | 7 |
| 19 | Jury Duty | 8 |
| 20 | First Aid | 8 |
| 21 | Plant and Safety Rules | 8 |
| 22 | Gender Neutral | 8 |
| 23 | Cause for Discipline, Discharge or Dismissal | 8 |
| 24 | Union Label | 8 |
| 25 | Industrial Injury | 9 |
| 26 | Seniority | 9 |
| 27 | Unpaid Leaves of Absence | 11 |
| 28 | Grievance and Arbitration Procedure | 12 |
| 29 | Supervisors | 13 |
| 30 | New Processes | 13 |
| 31 | Union Business | 14 |
| 32 | Sick Leave | 14 |
| 33 | Wages | 14 |
| 34 | Health and Welfare | 20 |
| 35 | Funeral Leave | 20 |
| 36 | Bargaining Unit Safety Committee | 21 |
| 37 | Pension Fund Retirement Plan | 21 |
| 38 | Successors | 22 |
| 39 | Waiver | 22 |
| 40 | R.educed Hours and Four-Day Work Week | 22 |
| 41 | Four Day Work Week | 22 |
| 42 | Duration of Agreement | 22 |
| | Exhibit A | 23 |
| | Letter of Understanding | 24 |

## PREAMBLE TO AGREEMENT

This Agreement, made this 1st day of October, 2004, by and between Vanard Lithographers, Inc. located at 3220 Kurtz Street, San Diego, California, 92110, hereinafter referred to as the Company, party of the first part, and Graphic Communications Union District Council No. 2, Local 388M, hereinafter referred to as the Union, party of the second part.

## SECTION 1
## RECOGNITION AND PURPOSE

1.1 The Company recognizes the Union as the exclusive collective bargaining agent for all full-time and regular part-time employees employed in the production, maintenance, shipping, and receiving warehouse unit, including truck drivers and outside transportation employees, but excluding all office clerical employees including Production Planning and Order Entry professional employees, plant clerical employees, sales representatives, guards, watch persons and supervisors as defined in the Act (LMRA 1947 as amended).

1.2 The Company will bargain collectively with the Union with respect to wages, hours of work and other conditions of employment for all employees in the bargaining unit herein above set forth.

1.3 The purpose of this Agreement is to promote and maintain mutually satisfactory industrial and economic relationships between the Company and the Union, and to provide for the operation of the Company under methods which will further to the fullest extent possible the safety and welfare of its employees, economy of operations, quality and quantity of output, cleanliness of plant and protection of property. The Company and the Union will abide by this Agreement, it being their purpose to settle all differences without disturbing industrial peace. It shall be the duty of the Union, and the Company, and the employees to cooperate fully, individually and collectively, for the advancement of these purposes.

## SECTION 2
## UNION SECURITY

2.1 All present employees and newly hired employees shall, as a condition of continued employment become and remain members of the Union within thirty-one (31) days of the signing of the Agreement, or thirty-one (31) days from the date of hire, whichever is applicable.

2.2 The Union hereby agrees to indemnify the Company against any award, judgement, loss or expense arising out of any legal claim made against the Company at the request of the Union pursuant to the provisions of this Section.

2.3 The Union agrees that notice shall be given in writing to the Employer and employee at least seventy-two (72) hours before any employee is to be removed from their employment by reason of their failure to maintain membership in good standing in the Union.

Employees who do not comply with the provisions of the Section shall be discharged by the Employer after the Union shows proof to the Employer that they have sent a letter, return receipt requested, to the employee informing the employee as follows:

1. The exact amount due.
2. How the amount was calculated

3. An exact date that the money must be paid.

2.4 Membership in good standing means only the timely tender by the employees of uniform initiation fees and periodic dues as may be lawfully required and that compliance with these financial obligations shall constitute compliance with the union security requirements of the agreement.

## SECTION 3
## UNION DUES CHECK-OFF

3.1 The Company agrees to deduct from the wages of those employees who so authorize it by written assignment, initiation fees and regular monthly Union membership dues.

Assignments of Authorizations once executed shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable Collective Bargaining Agreement between the Employer and the Union, whichever occurs sooner; provided however, that the Employer will continue to deduct monthly membership dues from the pay of each employee for whom it has on file an unrevoked authorization for check-off of dues form; and provided further that all employees who have on file an unrevoked authorization for check-off of dues shall have the same revocation rights as provided above. Any conflicting provisions of such authorization forms are hereby revoked and superseded by the provisions of this clause. The Union shall submit to the Company properly executed assignments for those employees from whose pay deduction shall be made.

The Company shall furnish the Union each month with a list of the employees from whose pay deductions have been made, and, at the same time, shall remit to the duly authorized office of the Union a check payable to the Local Union for the amount so deducted.

The Union accepts full responsibility for the authenticity of each and every authorization and assignment submitted to the Company and shall indemnify and save the Company harmless from any claims, suits, judgments, attachments and from any other form of liability as a result of making any deductions in accordance with the foregoing authorizations and assignments.

The Union agrees to refund promptly to the Company any such dues, initiation fees or assignments found to have been erroneously or improperly deducted.

Any employee promoted or transferred to a position outside the bargaining unit may revoke immediately any check-off authorization or assignment theretofore made by him.

## SECTION 4
## CREDIT UNION CHECK-OFF

4.1 The Employer agrees when feasible to institute payroll deduction for employees who wish to make regular deposits in a Credit Union.

## SECTION 5
## HOURS OF WORK AND OVERTIME

5.1 This Section is intended only to set forth the normal hours of work and shall not be construed as a guarantee of hours of work per day, per week, or of days of work per week except as modified by Section 17. Also, nothing in the Agreement shall be construed as permitting or

authorizing the pyramiding of overtime.

5.2 Forty (40) hours per week, Monday through Friday, shall constitute a normal week's work: eight (8) hours work, exclusive of (1/2) hours unpaid lunch period, shall constitute a day's work. All work in excess of forty (40) straight-time hours per week or in excess of eight hours per day shall constitute overtime. All hours worked or paid for (except sick pay) or any time off approved by management, shall count as time worked for overtime purposes. The overtime rate, except where a different overtime rate is specifically provided in this contract, shall be time and one-half the basic straight time rate for over eight (8) hours and up to and including ten (10) hours per shift, and at double the basic straight time rate for over ten (10) hours per shift. Saturday and Sunday shall be paid for at one and half (1 ½) times the straight time rate. Overtime on Sunday shall be voluntary.

5.3 The third shift shall work seven (7) consecutive hours and be paid for eight (8) hours' work. An Employee on the third shift who is late ten (10) minutes or less will receive the extra hour's pay. An employee, who is late more than then (10) minutes, will not receive the extra hour's pay unless he has a satisfactory excuse.

5.4 The employee regularly working on a piece of equipment or an operation shall be entitled to the overtime involved on such equipment or operation.

5.5 1. It is understood that reasonable overtime is necessary in order that the Company may meet necessary delivery requirements to its customers.

2. Unexcused absence and tardiness occurring during an overtime period shall be dealt with in accordance with the Company absenteeism\tardiness policy, as currently in effect.

3. The Company agrees to give as much notice as is reasonably possible to those employees assigned to overtime.

4. If an employee asks to be excused from overtime, management will make every effort to find another qualified employee to work in his/her place.

5. The Company agrees to distribute overtime as equally as possible, production requirements and other provisions of this contract permitting.

6. The rate of pay for work performed on the Saturday of a Holiday weekend shall be one and one-half (1-1/2) times the straight time rate of pay. This work would be on a voluntary basis only.

5.6 Any employee called to work by management before his regular starting time, shall be compensated at one and one-half (1-1/2) times his regular rate of pay for hours worked prior to the normal starting time, unless the employee requests to leave after working eight (8) hours.

5.7 There shall be a twenty-four (24) hour time lapse between the end of an employee's shift and the start of his next shift when a shift change is involved.

5.8 Workers shall be at their respective posts ready to begin work at the time their pay starts and shall not quit work in advance of the time their pay stops. If an employee is unable to report for work at his scheduled time, he will so notify his Supervisor as soon as possible.

## SECTION 6
## SHIFT PREMIUM

Employees regularly assigned to the second shift shall receive a premium of forty cents ($.40) per hour for each hour paid.

## SECTION 7
## HOLIDAYS

7.1 The following will be classified as holidays:

| | |
|---|---|
| New Year's Day | Day after Thanksgiving |
| Memorial Day | Christmas Eve Day |
| Fourth of July | Christmas Day |
| Labor Day | December 31st |
| Thanksgiving Day | Employee's Birthday |

In order to be eligible for the employee's birthday holiday, the employee must advise his Supervisor during the preceding week which day he will be off (during the week of his birthday). Effective February 1, 2005, the employee's birthday holiday will be deleted. Effective June 1, 2006 the employee's birthday holiday will be restored.

7.2 All regular full time employees covered by this agreement who have completed their probationary period shall receive eight hours pay at their regular straight time rate of pay for each holiday listed in Section 1 above, when no work is performed on the holiday provided that they work the last scheduled work day prior to, and the next work day after, such holiday unless excused by management. If an employee is absent due to a bona fide illness and works one day during a holiday workweek, he shall be eligible for his holiday pay. The Company reserves the right to require a doctor's certificate. A probationary employee shall, upon successful completion of the probationary period, be paid for any and all holiday s that occurred since his/her day of hire that he/she would have otherwise been eligible for except for being on probation.

7.3 Any work performed on holiday shall be compensated at time and one-half (1-1/2) the employee's regular rate of pay for the hours worked in addition to the holiday pay provided in 7.2 above.

7.3 If a holiday falls on Saturday, the Company shall have the option of granting the preceding Friday or following Monday off. If a holiday fall on Sunday, the Company shall have the option of granting the following Monday or preceding Friday off.

## SECTION 8
## VACATIONS

8.1 All regular full-time employees covered by this Agreement who have completed one year of continuous employment with the Company shall be entitled to one week's vacation (forty hours pay at their regular hours rate) with pay.

8.2 All regular full-time employees covered by this Agreement who have completed two (2) years of continuous employment with the Company shall be entitled to two (2) weeks vacation (eighty hours pay at their regular hours rate) with pay.

8.3 All regular full-time employees covered by this Agreement who have completed five (5) years of continuous employment with the Company shall be entitled to three week's vacation (120 hours pay at their regular hourly rate) with pay.

8.4 All regular full-time employees covered by this Agreement who have completed ten (10) years of continuous employment with the Company shall be entitled to eighteen (18) days vacation (144 hours pay at their regular hourly rate) with pay.

8.5 All regular full-time employees covered by this Agreement who have completed fifteen (15) continuous years of employment with the Company shall be entitled to twenty (20) days vacation (160 hours at there regular hourly rate) with pay. Effective February 1, 2005 those employees with four weeks of vacation shall be reduced to three weeks. Effective June 1, 2006 the fourth week of vacation shall be restored.

8.6 If the Company and the employee mutually agree, earned vacation in excess of the 1st and 2nd week may be worked at the employee's regular rate in addition to his vacation pay.

8.7 Vacations can be taken at such time as is designated by the employee with the approval of the company. Vacations are not cumulative and must be taken within the twelve-month period following the eligibility date. In unusual circumstances, the Company and shop committee may waive the requirement that an employee must take a vacation and will be paid in lieu thereof.

8.8 Employees leaving the employ of the Company during their first year of employment shall not be entitled to any prorated vacation pay. Also, any employee who voluntarily quits without one (1) week's notice or is discharged for gross misconduct (i.e. stealing) shall not be entitled to any prorated vacation pay.

8.9 If a holiday falls within the vacation period, the employee shall receive either an extra day's pay or an additional day's vacation, as the employee desires. If this situation occurs, the employee shall inform management prior to going on vacation.

8.10 The Company agrees to pay an employee his full vacation pay in advance of his vacation. The employee must submit a time card showing the total accrued vacation hours, "properly signed off" by his supervisor, one week prior to the start of his vacation.

8.11 Employees with one or more years of continuous employment who thereafter fail to quality for a regular vacation as above defined or whose services are thereafter terminated, shall receive prorated vacation pay based on the following percentages of straight time hours worked since the employee's last anniversary date of employment:

| | |
|---|---|
| One year or more up to five years | 4% |
| More than five (5) years | 6% |
| More than fifteen (15) years | 8% |

8.12 Time lost as the result of an industrial injury, as recognized by the Worker's Compensation Board, shall be counted as time worked for up to ninety (90) days for the purpose of vacation eligibility.

8.13 All regular part-time employees shall be eligible for pro rata vacation and holiday pay based on average number of days per week of hours per day that the employee is regularly scheduled to work. An employee to be eligible must be regularly scheduled to work not less than

twenty (20) hours per week.

8.14 Employees must work at least 1600 hours in a vacation eligibility year in order to receive their full vacation. Those actually working less than 1600 hours shall have their vacation reduced accordingly based on actual hours worked. Vacation time prorated since the employee's most recent anniversary date is not available to take until it becomes earned on the next anniversary date.

## SECTION 9
## MILITARY STATUS

9.1 An employee entering the Armed forces of the United States under provisions of any applicable Federal Law and who applies for his former job within ninety days after his honorable discharge will be, if the employee is still qualified to perform the duties of such job and if working conditions then permit, restored to his former or substantially equivalent job.

## SECTION 10
## MANAGEMENT RIGHTS

10.1 It is expressly agreed that all rights, which are ordinarily vested in and exercised by employers, except those, which are clearly and expressly relinquished herein by the Company, shall continue to vest exclusively and be exercised exclusively by the Company.

## SECTION 11
## NO STRIKE OR LOCKOUT

11.1 During the life of this Agreement no stoppages, strikes or slowdowns shall be caused or sanctioned by the Union and no lockouts shall be made by the Company. Any employee or employees individually or collectively, who shall cause or take part in any strike, work stoppage, interruption or any impeding of work during the life of this Agreement, may be disciplined or discharged by the Company. In the event of a strike or lockout, either party may secure immediate relief in a Court of competent jurisdiction.

## SECTION 12
## BULLETIN BOARD

12.1 The Company shall provide a bulletin board space for the posting of officially signed Union notices. The Union agrees that it will in no way malign the Company or its officials.

## SECTION 13
## UNION REPRESENTATION

13.1 An authorized representative of the Union shall be permitted to visit the Company's premises during working hours to investigate any matter covered by this Agreement provided he shall first orally notify the company of his visit and shall not interfere with the production of the Company.

## SECTION 14
## SEPARABILITY

14.1 In the event that any Federal or State legislation; governmental regulations or court

decision causes invalidation of any article or section of this Agreement, the Company and the Union agree to meet to negotiate any articles or section so affected. All other articles and sections not so invalidated shall remain in full force and effect.

**SECTION 15**
**EQUAL EMPLOYMENT OPPORTUNITY**

15.1 The Employer and the Union mutually agree that there will be no discrimination against any employee in the application of the terms of this Agreement by reason of race, sex, age, physical or mental disability, religion or any other category protected by applicable federal, state or local law. The Employer and Union agree that the Employer is permitted to take all actions necessary to comply with all applicable federal, state and local laws and regulations, including but not limited to the Americans with Disabilities Act, and including all new laws and regulations enacted during the term of the Agreement, regardless of any provision of this Agreement.

**SECTION 16**
**DRUG FREE WORK PLACE**

The employer and the Union both maintain a strong commitment to maintain a drug free work place.

**SECTION 17**
**CALL IN AND REPORTING PAY**

17.1 If an employee reports for work he shall be guaranteed his scheduled shift unless said employee was told not to report for work at least four (4) hours in advance, agrees otherwise or is discharged for just cause.

17.2 The provision of Section 17.1 shall not apply where fire, flood, explosion, bombing, earthquakes, general power failure or any other emergency condition beyond the Company's control make it impossible to start or continue work.

17.3 If an employee is called in to work on other than his regular straight time shift, he shall be guaranteed a minimum of four (4) hours work or four (4) hours pay unless he is notified by the Company not to report to work.

**SECTION 18**
**WORKING OUT OF CLASSIFICATION**

18.1 If an employee is assigned to temporary work (less than two (2) weeks) in a higher rated job classification, he/she shall receive the rate of pay for the next higher seniority increment on an hourly basis if said employee works longer than four (4) hours on said higher rated job.

18.2 No employee shall receive a reduction in pay for working on a lower rated job unless he is permanently transferred to said job.

18.3 No employee shall receive a reduction in pay if he is assigned to a lower rated job to facilitate the needs of the company. However, if an employee agrees to work on a lower rated job to suit his needs (i.e., to continue working) then the employee shall be paid according to the work being performed. Employees permanently transferred to a lower rated job shall receive the rate of said lower rated task.

## SECTION 19
## JURY DUTY

19.1 A regular employee who is called for jury service shall be excused from work for the day(s) on which he reports and shall receive, for each such day of jury service on which he otherwise would have worked, the difference between eight (8) times his straight time base hourly rate, exclusive of shift differential, and the payment he receives for jury service up to a maximum of five (5) days per employee in any one year except for Grand Jury service, the maximum shall be ten (10) days. A probationary employee, upon completion of his probationary period will be paid the appropriate jury service pay that he/she would have otherwise been eligible for except for being on probation. The employee will present proof of service and of the total amount of money received therefor.

First shift employees who are excused by the Court prior to 9:30 a.m. shall return to work.

## SECTION 20
## FIRST AID

20.1 Employees injured at work shall report their injuries immediately to their Supervisor for proper first aid, medical or surgical attention. It is absolutely mandatory that all injuries are reported to supervision immediately or as soon as is feasible whether or not first aid, medical or surgical attention is required.

## SECTION 21
## PLANT AND SAFETY RULES

21.1 Plant and safety rules not conflicting with this Agreement shall be posted in the plant, and will be enforced by Management.

## NEW SECTION 22
## GENDER NEUTRAL

The pronoun "he" found throughout this Agreement also refers to the pronoun "she".

## SECTION 23
## CAUSE FOR DISCIPLINE, DISCHARGE OR DISMISSAL

23.1 Any employee shall be subject to immediate discharge for just cause. The Employer may post safety and house rules, provided that such rules shall be conspicuously posted. If any such rules are alleged by the Union Shop Committee to be contrary to a specific provision of the Agreement, objection to such rules may be subjected to procedure in this Agreement provided for in the grievance and arbitration procedures, Section 28.

23.2 Employee Contact Forms involving "minor" infractions may not be utilized for disciplinary purposes in grievance or arbitration proceedings when they are over one (1) year old.

## SECTION 24
## UNION LABEL

24.1 Company is entitled to use of the Union label for the duration of this Agreement.

## SECTION 25
## INDUSTRIAL INJURY

25.1 When an employee sustains an industrial injury and the attending physician recommends that he not complete his scheduled hours during which the injury occurred, he will be compensated for the difference between the hours actually worked less than eight (8) or eight (8) hours at the straight time hourly rate.

25.2 When an employee incurs an industrial injury, the Company agrees to pay up to eight (8) hours of pay at the employee's regular straight time rate of pay while said employee is at the doctor due to the job related injury during the thirty (30) day period after the employee returns to work.

## SECTION 26
## SENIORITY

26.1 The principle of departmental seniority within classification, departmental seniority and plant seniority, will prevail provided the employees have relatively the same skill, knowledge and ability to perform the work available, in the following order:

1. <u>First or Principal Criteria</u>

   Departmental seniority within classification for:

   a. Promotion
   b. Reduction
   c. Layoff
   d. Recall
   e. Shift preference
   f. Vacation preference

   In exercising departmental seniority within classification for purposes of promotion, the normal progression would be to the next higher classification as indicated by the pay scale and in reverse order in case of layoff.

2. <u>Second Criteria</u>

   Departmental seniority for:

   a. Promotion
   b. Reduction
   c. Layoff*
   d. Recall

   *In the event of a layoff of more than five (5) consecutive days, departmental seniority shall govern within the department provided the employee has the same knowledge, skill and ability to perform the work available in the classification in which the employee intends to bump.

3. Third Criteria

Plant seniority for:

a. Promotion
b. Reduction
c. Layoff
d. Recall

26.2 An employee shall lose his seniority if he:

a. Quits
b. Is discharged for cause
c. Is laid off in excess of one (1) year
d. If he is absent three (3) consecutive workdays without reporting a reason acceptable to the Company justifying such absence.

26.3 New employees shall be considered probationary employees for the first ninety (90) calendar days extended by the number of days absent during their probationary period. Probationary employees may be laid off or discharged and such a layoff or discharge will not be subject matter under Section 28, Grievance and Arbitration Procedure.

26.4 An employee desiring a leave of absence without pay shall secure written permission from the Company. A copy of such permission shall be mailed to the Union.

26.5 In the event of a layoff where an employee retains seniority, he shall be given five (5) days' notice of recall mailed to his last known address. A copy of such notice shall be mailed to the Union. Said employee shall report within five (5) days from receipt of such notice or shall lose his seniority.

An employee, in the event of a layoff because of lack of work, will retain the seniority that had accrued up to the date of the layoff, but seniority will not accrue during a layoff because of lack of work if the layoff lasts longer than thirty-one (31) calendar days. If less, his seniority date will not be adjusted and he will receive seniority credit for the time that he was on layoff.

26.6 An employee transferred or promoted to a position with the Company outside the bargaining unit or on Union leave of absence may return to his former position with his former standings re-established if there is an opening or vacancy at his or her former position provided the employee obtained a withdrawal card from the Union and provided further that his return must take place within one (1) year from the time of his leaving the bargaining unit.

26.7 The Company agrees to compile a seniority list as of the last Friday of each month and submit such list to the Union by the Tenth (10) day of the following month. Said list shall include the employee's name, social security, home address, shift, rate, classification and date of last hire. The Company further agrees to supply the Union within two (2) working days with a list of all employees hired and terminated the previous day.

26.8 Employees will keep the Company informed of their addresses and telephone numbers and the Company, by endeavoring to contact an employee at his last known telephone number and by telegram at his last known address shall have fulfilled its obligation under this provision.

26.9 1. Employees may claim new shifts by departmental seniority within their classification.

a. Once an employee has exercised his/her bumping rights, a twelve (12) month period must elapse before that person can exercise the bumping right again.

b. There shall be no more than three (3) bumps effected per month, which shall be determined by plant seniority.

2. Employees may claim new shifts when vacancies occur in accordance with their departmental seniority within their classification. Claiming such a vacancy would not be considered a bump as defined above.

3. Nothing shall prohibit employees from changing shifts within their classification when the employees mutually agree.

4. In the event of layoff where employees are exercising bumping rights, such rights will include shift preference by plant seniority.

26.10 Job openings need not be posted for the classification of Janitor and Bindery Helper. All other permanent job openings in the bargaining unit will be posted. Applicants will be given three (3) working days in which to apply for the opening.

## SECTION 27
## UNPAID LEAVES OF ABSENCE

27.1 The Employer will grant unpaid leaves of absence up to one (1) employee in order to attend Union conventions.

27.2 When the requirements of production permit, employees who have been on the payroll for at least one (1) year may be granted leaves of absence in writing for other than sickness up to a period of thirty-one (31) days without loss of seniority. Seniority will accrue during the 31 calendar days provided that the employee returns to work at the end of the 31 calendar days.

Such leaves may be extended for like periods if agreeable to management. If management approves the extension of the leave of absence beyond 31 calendar days, the employee will not lose the seniority he accrued prior to the beginning date of his leave of absence, but his seniority date will be adjusted to reflect the fact that no seniority was earned while he was on leave of absence; his seniority accrual ceased on the date on which the original leave of absence began.

27.3 The Company will not pay insurance premiums for any employees remaining on leave of absence for more than 31 days. However, the employee may be allowed to continue his coverage at his own expense. The Company will continue to pay its share of hospitalization insurance and life insurance for the first one hundred eighty (180) days for employees on leave of absence because of industrial injury.

27.4 Upon receipt of a doctor's verification that a leave of absence is necessary the Company agrees to grant up to one (1) year leave of absence for illness, pregnancy, or injury. In the event an employee is unable to return to work after three (3) months leave of absence, additional leave will only be granted if the employee provides the Company with medical proof by an attending

physician that additional leave is needed. During this leave of absence the employee will retain his seniority status, but no seniority will accrue while on leave of absence that lasts more than six months.

27.5 An employee who accepts employment with another employer or who engages in a business for profit during said leave of absence will be considered to have terminated his employment with the Company.

27.6 An employee whose absence exceeds the leave of absence granted to him by the Company will be considered to have terminated his employment. An employee on leave of absence who applies for unemployment insurance benefits will be considered to have terminated his employment.

## SECTION 28
## GRIEVANCE AND ARBITRATION PROCEDURE

28.1 Within five (5) working days of the occurrence of any controversy that may arise pertaining to the interpretation or application of the provisions contained herein the following shall be initiated.

**Step 1** - An employee shall present his grievance to his shift steward.

a. The shift steward and the employee shall then contact the shift foreman to immediately attempt to resolve the grievance.

b. In the event the grievance is not satisfactorily resolved a formal written grievance shall be filed within one (1) working day and referred to Step 2.

**Step 2** - The formal written grievance (Request for Grievance Hearing) shall briefly outline the grievance and the copies shall be distributed to the shift supervisor, the plant superintendent and the Union shop steward.

a. The shift foreman shall have three (3) working days within which to resolve said grievance.

b. In the event the grievance is not satisfactorily resolved, it may be referred to Step 3 within one (1) working day.

**Step 3** - The General Manager shall meet with the Grievance Committee regarding such grievance.

a. The General Manager shall have three (3) working days within which to resolve said grievance subsequent to such meeting.

b. In the event the grievance is not satisfactorily resolved, it may be referred to Step 4 within one (1) working day.

**Step 4** - A management designee shall meet with the Grievance committee and District Council Business Representative regarding such grievance.

a. Said management designee shall have two (2) working days within which to resolve

such grievance subsequent to said meeting.

b. In the event the grievance is not satisfactorily resolved, it may immediately be referred to the committee as provided in Step 3 of this Section.

28.2 Notwithstanding Steps 1 through 4 of this Section, such step(s) may by mutual consent be waived when necessary.

28.3 In the event of controversy arising pertaining to the interpretation or application of any provisions of this Agreement which cannot be settled directly by the Company and the Union, the Company and the Union agree to submit the point(s) in question to a committee of three (3) for arbitration, one member to be selected by the Company, one to be selected by the Union, and one, a third part, shall be selected by the first and second members. This third party shall be chosen in the following manner: within five (5) days after a demand of either party for arbitration, the parties shall request that the Federal Mediation and Conciliation Service (FMCS) submit a list of nine arbitrators. The company and the Union shall then, in return, each strike one name from the list submitted until one name remains. This person shall act as the third party to the arbitration. It is agreed that the expenses of the arbitrator so selected shall be borne equally by the Company and the Union. During such time as the matter is pending before the arbitration committee there shall be no strike, lockout, work stoppage, or slow downs. The decision of the arbitrator shall be final and binding on the Company and the Union. The arbitrator shall have no power to alter, change, add to, delete or subtract from the terms of this Agreement or infringe upon the rights of management where management is given discretion in this Agreement.

28.4 The above time limits notwithstanding the parties agree to temporarily waive the applicable time limitations set forth herein regarding the processing of a grievance whenever said grievance is resolved/withdrawn by a Shop Steward or Union Representative and/or Officer and said grievance is appealed by the grievant pursuant to the Union's internal grievance appeal procedure. This temporary waiver shall last only for that period of time necessary to exhaust the Union's appeal procedure. Thereafter, this temporary waiver shall be unilaterally terminated upon notice by the Union that the resolution\withdrawal of the grievance in question has been sustained or overruled by the Unions appeal procedure. The Union agrees to hold the Employer harmless with respect to potential back pay liability that may accrue during said waiver period.

## SECTION 29
## SUPERVISORS

29.1 Supervisors shall be allowed to work in the bargaining unit on an emergency basis, or to instruct, as long as they do not replace any employee covered by this Agreement.

## SECTION 30
## NEW PROCESSES

30.1 If in the future, the Company places into operation different types of machinery, apparatus, equipment or new processes which necessitate the installation of new job classifications or the making of major changes to the present job classifications, the Company will establish wage rates for such job classifications within sixty (60) days after such new or changed types of machinery, apparatus, equipment or new processes are placed in production. In the event the Union considers the rate so established improper, they shall within thirty (30) days thereafter, file a complaint in the Company office and such complaints shall be processed starting with the second step of the regular grievance procedure. A rate shall be established within sixty (60) days.

30.2 The Company retains the exclusive right to install new processes, machinery, apparatus or equipment, as they deem appropriate.

## SECTION 31
## UNION BUSINESS

31.1 The Union shall promptly advise the Company of any changes of Union Stewards or officials.

31.2 The Chief Shop Steward or written designee in the Chief Steward's absence is the only Steward permitted to contact managers or employees on Union matters.

## SECTION 32
## SICK LEAVE

32.1 All employees with one or more years continuous employment with the Company as of December 1st shall be entitled to a total of five (5) days paid sick leave per year at their regular straight time hourly rate of pay for absence from the job due to sickness or injury. Employees initially become eligible for five (5) days sick leave on their first anniversary. On the following December 1st they will be given credit for sick leave accumulated from their first anniversary date through December 1st on a prorated basis to the nearest full day. Effective February 1, 2005, the sick leave benefit shall be reduced by two days. Effective June 1, 2006 the sick leave benefit shall be restored to five days per year.

32.2 On each successive December 1st, each employee shall be eligible for five (5) days-sick benefit allowances. The unused sick benefit allowance may be cumulative to a total of (thirty-five (35) days effective October 1, 1988).

32.3 Employees may, at their option, on November 30 of each year, request up to their total earned accrued sick leave or any portion thereof at their regular straight time hourly rate thus reducing their sick leave allowance accordingly.

32.4 Employees who do not elect the option, as elucidated in Section 32.3, may keep their days and on the following December 1st will automatically receive a day's pay for each day accumulated over thirty-five (35) days.

32.5 Sick leave will be integrated with UCD and Worker's Compensation benefits so that the sum of the daily sick leave allowed and compensation and disability benefits which may be payable to the employee shall not exceed the employee's regular straight time rate of pay.

32.6 The Employer may request a doctor's certificate as proof of illness.

32.7 Any employee who gives five (5) working days notice upon termination of employment will receive pay for any unused sick leave allowance.

## SECTION 33
## WAGES

33.1 If an employee is given a promotion, he/she shall be retained at his/her current rate for six months; from this point on he/she will receive raises each six (6) months according to the

regular wage schedule for the new job.

## Wages

| | Effective 10/01/02 | -4.35% Effective 02/01/05 | 1.5% Effective 06/01/06 |
|---|---|---|---|
| **I Press** | | | |
| **Press 6C 40"** | | | |
| 1st 6 months | $12.53 | $11.98 | $12.16 |
| 2nd 6 months | $13.57 | $12.98 | $13.17 |
| 3rd 6 months | $14.64 | $14.00 | $14.21 |
| 4th 6 months | $15.83 | $15.14 | $15.37 |
| 5th 6 months | $15.95 | $15.26 | $15.49 |
| 6th 6 months | $17.90 | $17.12 | $17.38 |
| 7th 6 months | $20.07 | $19.20 | $19.49 |
| 8th 6 months | $21.93 | $20.98 | $21.29 |
| 9th 6 months | $23.04 | $22.04 | $22.37 |
| Journeyman | $24.25 | $23.20 | $23.55 |
| **Press 5C 38"** | | | |
| 1st 6 months | $11.63 | $11.12 | $11.29 |
| 2nd 6 months | $12.53 | $11.98 | $12.16 |
| 3rd 6 months | $13.57 | $12.98 | $13.17 |
| 4th 6 months | $14.64 | $14.00 | $14.21 |
| 5th 6 months | $15.83 | $15.14 | $15.37 |
| 6th 6 months | $15.95 | $15.26 | $15.49 |
| 7th 6 months | $17.90 | $17.12 | $17.38 |
| 8th 6 months | $20.07 | $19.20 | $19.49 |
| 9th 6 months | $21.93 | $20.98 | $21.29 |
| Journeyman | $23.04 | $22.04 | $22.37 |
| **Press 301, 320 (with one man)** | $21.93 | $20.98 | $21.29 |
| **2C 38"** | | | |
| 1st 6 months | $ 7.90 | $ 7.56 | $ 7.67 |
| 2nd 6 months | $ 8.60 | $ 8.23 | $ 8.35 |
| 3rd 6 months | $11.13 | $10.65 | $10.81 |
| 4h 6 months | $11.89 | $11.37 | $11.54 |
| 5th 6 months | $12.77 | $12.21 | $12.39 |
| 6th 6 months | $13.65 | $13.06 | $13.26 |
| 7th 6 months | $14.61 | $13.97 | $14.18 |
| 8th 6 months | $15.72 | $15.04 | $15.27 |
| 9th 6 months | $16.36 | $15.65 | $15.88 |
| 10th 6 months | $18.17 | $17.38 | $17.64 |
| Journeyman | $19.75 | $18.89 | $19.17 |

| | Effective 10/01/02 | -4.35% Effective 02/01/05 | 1.5% Effective 06/01/06 |
|---|---|---|---|
| **Press 306, 308 (36" 1C)** | | | |
| 1st 6 months | $ 8.60 | $ 8.23 | $ 8.35 |
| 2nd 6 months | $ 9.63 | $ 9.21 | $ 9.35 |
| 3rd 6 months | $11.13 | $10.65 | $10.81 |
| 4th 6 months | $11.89 | $11.37 | $11.54 |
| 5th 6 months | $12.77 | $12.21 | $12.39 |
| 6th 6 months | $13.65 | $13.06 | $13.26 |
| 7th 6 months | $14.61 | $13.97 | $14.18 |
| 8th 6 months | $15.72 | $15.04 | $15.27 |
| 9th 6 months | $16.36 | $15.65 | $15.88 |
| 10th 6 months | $18.17 | $17.38 | $17.64 |
| Journeyman | $18.74 | $17.92 | $18.19 |
| **Press 304, 307 (Multilith)** | | | |
| 1st 6 months | $ 7.70 | $ 7.37 | $ 7.48 |
| 2nd 6 months | $ 8.86 | $ 8.47 | $ 8.60 |
| 3rd 6 months | $10.24 | $ 9.79 | $ 9.94 |
| 4th 6 months | $10.86 | $10.39 | $10.55 |
| 5th 6 months | $11.49 | $10.99 | $11.15 |
| 6th 6 months | $12.07 | $11.54 | $11.71 |
| Journeyman | $12.64 | $12.09 | $12.27 |
| **Press Asst.** | | | |
| 1st 6 months | $13.65 | $13.06 | $13.26 |
| 2nd 6 months | $14.03 | $13.42 | $13.62 |
| 3rd 6 months | $14.41 | $13.78 | $13.99 |
| 4 th 6 months | $14.79 | $14.15 | $14.36 |
| 5 th 6 month | $15.17 | $14.51 | $14.73 |
| 6 th 6 months | $15.55 | $14.87 | $15.09 |
| 7 th 6 months | $15.93 | $15.24 | $15.47 |
| 8 th 6 months | $16.31 | $15.60 | $15.83 |
| 9 th 6 months | $16.69 | $15.96 | $16.20 |
| Journeyman | $17.50 | $16.74 | $16.99 |

| | Effective 10/01/02 | -4.35% Effective 02/01/05 | 1.5% Effective 06/01/06 |
|---|---|---|---|
| **II Pre Press** | | | |
| **Electronic Pre Press** | | | |
| 1 st 6 months | $ 9.60 | $ 9.18 | $ 9.32 |
| 2 nd 6 months | $10.60 | $10.14 | $10.29 |
| 3 rd 6 months | $11.60 | $11.10 | $11.27 |
| 4 th 6 months | $12.60 | $12.05 | $12.23 |
| 5 th 6 months | $13.60 | $13.01 | $13.21 |
| 6 th 6 months | $14.60 | $13.96 | $14.17 |
| 7 th 6 months | $15.60 | $14.92 | $15.14 |
| 8 th 6 months | $16.60 | $15.88 | $16.12 |
| 9 th 6 months | $17.60 | $16.83 | $17.08 |
| Journeyman | $18.60 | $17.79 | $18.06 |
| **Stripper** | | | |
| 1st 6 months | $11.40 | $10.90 | $11.06 |
| 2nd 6 months | $12.44 | $11.90 | $12.08 |
| 3rd 6 months | $13.92 | $13.31 | $13.51 |
| 4th 6 months | $14.70 | $14.06 | $14.27 |
| 5th 6 months | $15.57 | $14.89 | $15.11 |
| 6th 6 months | $16.44 | $15.72 | $15.96 |
| 7th 6 months | $17.43 | $16.67 | $16.92 |
| 8th 6 months | $18.52 | $17.71 | $17.98 |
| 9th 6 months | $19.16 | $18.33 | $18.60 |
| 10th 6 months | $19.69 | $18.83 | $19.11 |
| Journeyman | $21.33 | $20.40 | $20.71 |
| **Camera** | | | |
| 1st 6 months | $ 8.60 | $ 8.23 | $ 8.35 |
| 2nd 6 months | $ 9.63 | $ 9.21 | $ 9.35 |
| 3rd 6 months | $11.13 | $10.65 | $10.81 |
| 4th 6 months | $11.89 | $11.37 | $11.54 |
| 5th 6 months | $12.77 | $12.21 | $12.39 |
| 6th 6 months | $13.65 | $13.06 | $13.26 |
| 7th 6 months | $14.61 | $13.97 | $14.18 |
| 8th 6 months | $15.72 | $15.04 | $15.27 |
| 9th 6 months | $16.36 | $15.65 | $15.88 |
| 10th 6 months | $16.89 | $16.16 | $16.40 |
| Journeyman | $17.51 | $16.75 | $17.00 |

| | Effective 10/01/02 | -4.35% Effective 02/01/05 | 1.5% Effective 06/01/06 |
|---|---|---|---|
| **Platemaker** | $ 8.60 | $ 8.23 | $ 8.35 |
| 1st 6 months | $ 9.22 | $ 8.82 | $ 8.95 |
| 2nd 6 months | $10.26 | $ 9.81 | $ 9.96 |
| 3rd 6 months | $11.76 | $11.25 | $11.42 |
| 4th 6 months | $12.52 | $11.98 | $12.16 |
| 5th 6 months | $13.40 | $12.82 | $13.01 |
| 6th 6 months | $14.27 | $13.65 | $13.85 |
| 7th 6 months | $15.25 | $14.59 | $14.81 |
| 8th 6 months | $16.35 | $15.64 | $15.87 |
| Journeyman | $16.99 | $16.25 | $16.49 |
| **III Bindery** | | | |
| **Bindery A** | | | |
| 1st 6 months | $ 8.60 | $ 8.23 | $ 8.35 |
| 2nd 6 months | $ 9.56 | $ 9.14 | $ 9.28 |
| 3rd 6 months | $10.94 | $10.46 | $10.62 |
| 4th 6 months | $11.56 | $11.06 | $11.23 |
| 5th 6 months | $12.19 | $11.66 | $11.83 |
| 6th 6 months | $12.77 | $12.21 | $12.39 |
| 7th 6 months | $13.34 | $12.76 | $12.95 |
| 8th 6 months | $14.02 | $13.41 | $13.61 |
| 9th 6 months | $14.59 | $13.96 | $14.17 |
| 10th 6 months | $15.21 | $14.55 | $14.77 |
| Journeyman | $16.36 | $15.65 | $15.88 |
| **Bindery B** | | | |
| 1st 6 months | $ 8.21 | $ 7.85 | $ 7.97 |
| 2nd 6 months | $ 9.14 | $ 8.74 | $ 8.87 |
| 3rd 6 months | $10.45 | $10.00 | $10.15 |
| Journeyman | $11.56 | $11.06 | $11.23 |
| **IV Shipping** | | | |
| **Shipping\Rec.\Warehouse** | | | |
| 1st 6 months | $ 8.21 | $ 7.85 | $ 7.97 |
| 2nd 6 months | $ 9.26 | $ 8.86 | $ 8.99 |
| 3rd 6 months | $10.61 | $10.15 | $10.30 |
| 4th 6 months | $11.19 | $10.70 | $10.86 |
| 5th 6 months | $12.35 | $11.81 | $11.99 |
| Journeyman | $12.88 | $12.32 | $12.50 |

| | Effective 10/01/02 | -4.35% Effective 02/01/05 | 1.5% Effective 06/01/06 |
|---|---|---|---|
| **Truck Driver** | | | |
| 1st 6 months | $ 8.21 | $ 7.85 | $ 7.97 |
| 2nd 6 months | $ 9.26 | $ 8.86 | $ 8.99 |
| 3rd 6 months | $10.61 | $10.15 | $10.30 |
| 4th 6 months | $11.19 | $10.70 | $10.86 |
| 5th 6 months | $12.35 | $11.81 | $11.99 |
| Journeyman | $12.88 | $12.32 | $12.50 |
| **V Plant Maintenance** | | | |
| **Plant Maint. "B"** | | | |
| 1st 6 months | $ 8.21 | $ 7.85 | $ 7.97 |
| 2nd 6 months | $ 9.14 | $ 8.74 | $ 8.87 |
| 3rd 6 months | $10.45 | $10.00 | $10.15 |
| Journeyman | $11.56 | $11.06 | $11.23 |
| **Janitor** | | | |
| 1st 6 months | $ 8.21 | $ 7.85 | $ 7.97 |
| 2nd 6 months | $ 9.14 | $ 8.74 | $ 8.87 |
| Journeyman | $10.95 | $10.47 | $10.63 |

The contract will re-open for wage negotiations on August 1, 2005.

## SECTION 34
## HEALTH AND WELFARE

### 34.1 Health & Welfare

The Employer agrees to pay contributions each month to the San Diego County Teamsters-Employers Insurance Trust Fund on behalf of each employee covered by this Agreement to provide Hospital and Medical coverage (Plan A) Dental coverage (Plan 1) Prescription Drug (Plan T.P.) Vision coverage and Life Insurance coverage.

The Company's maximum obligation to contribute, to provide the above benefits per month, per calendar year, based on the total for all benefit plans shall be as follows:

January 1, 2005 $625.90

The contract will re-open for Health and Welfare discussions on August 1, 2005. Any total plan cost above these shall be deducted from the employee's earnings in the month in which it is paid by the Company.

By entering into this Agreement, the parties specifically agree that this contract shall serve authorization under the California Labor Code for such an automatic payroll deduction of the amount in excess of the amounts shown above required pay for the above referenced coverage.

Thereafter, and for all new employees, the payment shall be made for each employee the first day of each month provided the employee has worked a minimum of eighty (80) hours in the previous report month.

### 34.2 Acceptance of Trust Documents

The parties hereto agree to accept and execute such "Acceptance of Trust Documents" as may be required for participation in each Trust and such payments shall be made in accordance with the provisions established by the Joint Board of Trustees.

## SECTION 35
## FUNERAL LEAVE

35.1 When death occurs to a member of an employee's immediate family, the employee will be granted an appropriate funeral leave and he shall be compensated at his regular hourly wage rate (including shift differential) for his regular scheduled hours of work, not exceeding eight (8) hours per day, and subject to the following limitations:

a. Employees have the option of taking the three (3) day funeral leave either the day of the funeral and the two preceding days, or the day of the funeral and the two days following the funeral or the day of the funeral and one preceding and one day following.

b. Members of an employee's immediate family are limited to father, mother, current spouse, son or daughter, sister or brother, current spouse's mother or father, grandparents, grandchildren and stepchildren.

c. No such paid funeral leave will be granted where the employees do not attend the funeral of the deceased. No such payment shall be made where no regular work time is

lost. No such payments will be made if the employee has not completed his probationary period.

35.2 The employee will not be paid a funeral leave allowance for any of the specified days if he is qualified and was paid on another basis for such a day or days. (Example: holiday or vacation).

## SECTION 36
## BARGAINING UNIT SAFETY COMMITTEE

36.1 Both parties recognize the need and value of safe and healthful working conditions. To maintain and improve such conditions where feasible, a safety committee consisting of one (1) bargaining unit employee representing different areas of the plant shall be established. Said committee shall elect a chairman and shall meet monthly. This committee shall have the responsibility on a continuing basis to study, and make recommendations for the maintenance of proper health and safety standards.

Said chairman shall be a member of the plant safety committee, which shall consist of representatives of other operating department and the General Manager and shall meet on a monthly basis. If an alleged unsafe condition, which has been reported to the Plant Safety Committee (at its regular monthly meeting), is not satisfactorily resolved, it may be processed starting with Step III of the regular grievance procedure.

The Employer and the Union both maintain a strong commitment to maintain a drug free workplace.

## SECTION 37
## PENSION FUND RETIREMENT PLAN

37.1 The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement and Retirement Benefit Plan, dated October 1, 1955, establishing the Pressman Retirement Fund, the same as though they were signatory parties thereto.

37.2 The Employer agrees to contribute to the retirement plans the net sum of $60.00 per month for each employee who, in the immediately preceding calendar month worked or was paid for eighty (80) or more hours to the Trustees of the Graphic Communications International Union-Employer Retirement Fund, (formerly the IPP and AU of NA Employer's Retirement Fund), in the manner prescribed by the retirement fund committee, for provisions of those retirement benefit plans. Effective January 1, 1991, said monthly contribution will be reduced to $21.65, and the remaining $38.35 will be contributed to the Western States Income Security Fund in the manner prescribed by the Trustees of said Fund for the term of the Agreement. Individual employee participation in the pre-tax deferral of earnings shall be in accordance with the provisions of said Fund and employees may change such payroll deductions no more than once a year.

37.3 Effective July 1, 2001, increase the contribution in the Western States Income Security Fund from $43.35 to $48.35.

Effective September 1, 2002, increase the contribution in the Western States Income Security Fund from $48.35 to $53.35.

37.4 It is understood and agreed that the contributions to the retirement fund shall constitute deductible business expense by the Employer for income tax purposes.

## SECTION 38
## SUCCESSORS

38.1 This Agreement shall be binding upon the successors or assignees of either party. The provisions, terms or obligations wherein contained shall not be affected or changed in any respect by the sale, transfer, or assignment of the Company.

## SECTION 39
## WAIVER

39.1 This Agreement contains all of the covenants, stipulations and provisions agreed upon by the parties hereto, and no representative of either party has the authority to make, and none of the parties shall be bound by any statement, representation or agreement reached prior to the signing of this Agreement, and not set forth herein.

## SECTION 40
## REDUCED HOURS AND FOUR DAY WORK WEEK

40.1 Reduced Hours: It is recognized that conditions which result in lack of work or slack business sometimes warrant the temporary reduction of daily working hours. In such event the Company may reduce hours uniformly on a departmental or functional basis, as long as notice is given the previous day.

## SECTION 41
## THE FOUR-DAY WORKWEEK

41.1 When the Employer elects to use a State work sharing program in connection with its decision to work a regular four (4) day, thirty-two (32) hours work week or less, it shall contact its Union representative. Thereafter, the Union representative (and/or the Shop Committee, at the discretion of the Union) shall cooperate to complete necessary paperwork and other details, In cases of need, the affected Union's Secretary-Treasurer and the Employer representative may consult to expedite the process.

## SECTION 42
## DURATION OF AGREEMENT

42.1 This Agreement shall remain in full force and effect from October 1, 2004 to September 30, 2006 and shall be considered as self renewing for yearly periods thereafter, unless notice is filed in writing by either party with the other party at least 60 days prior to the expiration of this Agreement indicating a desire to change or modify. There will be a re-opener for Wages and Health and Welfare negotiations on August 1, 2005.

FOR THE UNION

[signature]

PRESIDENT

Date: 6/6/05

FOR THE COMPANY

Joseph L. Trifentelli [signature]

Date: 6/1/05

**EXHIBIT A**
**GENERAL PROVISIONS**

A.1 Reduction in Rate - No individual employee shall have his hourly rate reduced by the application of this Agreement and the Union agrees that it will not object to the payment of any additional compensation over and above the minimum hourly rate herein provided.

A.2 Lead Person - All lead personnel shall receive a minimum of 50 cents per hour over their own rate or the highest rate they are assigned to lead, whichever is higher.

Lead Persons will be selected by the Company solely on the basis of qualifications to do the job. Seniority will not be a determining factor for such selection. A Lead Person will continue to accrue seniority in last held classification. A Lead Person cannot discipline or recommend discipline or fire fellow employees to his supervisor. When a supervisor is not present, if four or less pieces of equipment are operating, the Lead Person may run on of them. If more than four pieces of equipment are operating, the Lead Person will not be required to run equipment. A Lead Person who isn't regularly assigned to run equipment should not be given an opportunity to work overtime on equipment until all other personnel who regularly work on equipment and are qualified have been given an opportunity to work the overtime.

A Lead Person who is not regularly assigned to run equipment may bump back into his/her previous job and shift by departmental seniority within their classification.

A.3 The Company shall have the right to train management trainees and sales representatives subject to terms and conditions as mutually agreed upon by the Company and the Union.

## LETTER OF UNDERSTANDING

It is agreed and understood by the parties that employees who currently have five (5) weeks vacation shall be reduced to four (4) weeks vacation effective February 1, 2005. Effective June 1, 2006, they shall be restored to five (5) weeks vacation.

FOR THE UNION

[signature]
PRESIDENT

Date: 6/6/05

FOR THE COMPANY

Joseph L. Fitzgerald [signature]

Date: 6/1/05

LETTER OF UNDERSTANDING

BETWEEN

VANARD LITHOGRAPHERS

&

GRAPHIC COMMUNICATIONS / UNION TEAMSTER DISTRICT COUNCIL #2

IT IS AGREED AND UNDERSTOOD THAT PARAGRAPH 34.1 IS TO BE INTERPRETED CONSISTENT WITH THE AGREEMENT ACCEPTING THE SAN DIEGO COUNTY TEAMSTER – EMPLOYERS INSURANCE TRUST RULER.

[signature]
FOR THE UNION
RYAN SHERARD

2·20·07
DATED

[signature]
FOR THE COMPANY
TOM PUFFER

14 Feb 07
DATED

Western States Income Security Fund Trust Agreement

**EXHIBIT 2**

# WESTERN STATES INCOME SECURITY FUND

# PENSION TRUST AGREEMENT

WESTERN STATES INCOME SECURITY FUND

PENSION TRUST AGREEMENT

The trust agreement for the pension portion of the WESTERN STATES INCOME SECURITY FUND is hereby amended to read as set forth in the Trust Agreement attached hereto and made part hereof.

The individuals signing below as Trustees thereby accept their continued appointment as Trustees under the Trust Agreement.

This Trust Agreement is effective January 1, 1991.

EMPLOYER TRUSTEES:

UNION TRUSTEES:

# WESTERN STATES INCOME SECURITY FUND PENSION TRUST AGREEMENT

## OUTLINE OF CONTENTS


| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| | A. | Name | 1 |
| | B. | Purpose | 1 |
| | C. | Trust Irrevocable | 1 |
| | D. | Benefits | 2 |
| II. | DEFINITIONS | | 3 |
| | A. | Joint Board of Trustees | 3 |
| | B. | Union | 3 |
| | C. | Association | 3 |
| | D. | Employer | 3 |
| | E. | Contribution Agreement | 3 |
| | F. | Participant and Beneficiary | 4 |
| | G. | Plan Year | 4 |
| | H. | Fund Custodian | 4 |
| | I. | Investment Manager | 4 |
| III. | OBLIGATIONS OF EMPLOYERS | | 5 |
| | A. | Payment of Contributions | 5 |
| | B. | Due Date | 5 |
| | C. | Delinquent Contributions | 5 |
| | D. | Recordkeeping and Audits | 8 |
| | E. | Collection Actions | 10 |
| | F. | Mistaken Contributions | 11 |
| | G. | Cooperation With Board | 13 |
| | H. | Limitation On Liability Of Employers | 13 |
| | I. | Rules and Regulations | 13 |
| IV. | FIDUCIARIES | | 14 |
| | A. | General Rules | 14 |
| | B. | Fiduciary Standards | 14 |
| | C. | Allocation of Fiduciary Responsibilities | 15 |
| | D. | Liability of Fiduciaries | 15 |
| | E. | Compensation and Expenses | 17 |
| | F. | Bonds and Insurance | 17 |
| | G. | Standard of Review | 18 |
| V. | APPOINTMENT AND PROCEDURES OF JOINT BOARD OF TRUSTEES | | 20 |
| | A. | Number of Trustees | 20 |
| | B. | Method of Appointment of Union Trustees | 20 |
| | C. | Method of Appointment of Employer Trustees | 21 |

D. Term of Office . . . . . . . . . . . . . . . . . . . . 21
E. Officers . . . . . . . . . . . . . . . . . . . . . . . 21
F. Meetings . . . . . . . . . . . . . . . . . . . . . . . 21
G. Quorum . . . . . . . . . . . . . . . . . . . . . . . . 22
H. Method of Voting . . . . . . . . . . . . . . . . . . . 22
I. Arbitration of Deadlocks . . . . . . . . . . . . . . . 23
J. Establishment of Administrative Office . . . . . . . . 24
K. Execution of Instruments . . . . . . . . . . . . . . . 24

VI. AUTHORITY OF JOINT BOARD OF TRUSTEES . . . . . . . . . . 26

A. General Authority . . . . . . . . . . . . . . . . . . 26
B. Establishment of Plan and Claim Procedures . . . . . . 26
C. Records and Reports . . . . . . . . . . . . . . . . . 26
D. Miscellaneous Powers . . . . . . . . . . . . . . . . . 27
E. Limitation on Liability . . . . . . . . . . . . . . . 30

VII. FUND CUSTODIAN . . . . . . . . . . . . . . . . . . . . 33

A. Appointment . . . . . . . . . . . . . . . . . . . . . 33
B. Resignation or Removal . . . . . . . . . . . . . . . . 33

VIII. FUNDING AND INVESTMENTS . . . . . . . . . . . . . . . 34

A. Funding and Investment Policies . . . . . . . . . . . 34
B. Investment Decisions . . . . . . . . . . . . . . . . . 34
C. Investment Standards . . . . . . . . . . . . . . . . . 34
D. Investment Powers . . . . . . . . . . . . . . . . . . 35

IX. AMENDMENT, TERMINATION AND MERGER . . . . . . . . . . . 40

A. Amendments . . . . . . . . . . . . . . . . . . . . . . 40
B. Mandatory Amendments . . . . . . . . . . . . . . . . . 40
C. Termination . . . . . . . . . . . . . . . . . . . . . 41
D. Transfer of Assets to or from Another Benefit Trust . . . . . . . . . . . . . . . . . . . . . . . . 41
E. Merger . . . . . . . . . . . . . . . . . . . . . . . . 42
F. Termination of Individual Employers . . . . . . . . . 42

X. MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . 43

A. Employer-Employee Relationship Not Affected . . . . . 43
B. Rights and Remedies Limited . . . . . . . . . . . . . 43
C. Payments During Incapacity . . . . . . . . . . . . . . 43
D. Governing Law, Severability of Provisions and Interpretation . . . . . . . . . . . . . . . . . . 43

# WESTERN STATES INCOME SECURITY FUND

# PENSION TRUST AGREEMENT

## I. INTRODUCTION.

A. Name. The official name of the Trust created hereby, which is generally referred to hereafter as the "Trust", is: WESTERN STATES INCOME SECURITY FUND PENSION TRUST. Its original effective date was September 8, 1972. This restatement is effective as of January 1, 1991.

B. Purpose. It is the purpose of this Trust to use and invest the contributions received by it for the exclusive purpose of providing benefits to Participants and their Beneficiaries (as defined in paragraph F of Article II) and defraying reasonable expenses of administration. This purpose shall be accomplished in accordance with all applicable laws, specifically including the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended from time to time, and the Internal Revenue Code of 1986 ("Code"), as amended from time to time.

C. Trust Irrevocable. The Trust shall be irrevocable (although it may be terminated as hereafter provided). No part of its corpus or income shall ever revert to or inure to the benefit of any contributing employer provided that:

(1) Erroneous contributions may be returned to Employers as provided in paragraph F of Article III, and

(2) The Plan may provide that forfeitures will be credited against required Employer contributions.

D. Benefits. As used herein the term "benefits" means as follows:

(1) General. The general type of benefits to be provided are pension benefits and other benefits which are incidental thereto and which the law would permit to be provided hereunder.

(2) Specific. The specific benefits from time to time provided, and the eligibility requirements therefore, are set forth in one or more documents referred to hereafter collectively as the WESTERN STATES INCOME SECURITY FUND, or "Plan", which documents describe all types and schedules of benefits from time to time provided hereunder. The Plan, as amended from time to time, is incorporated herein by reference and is part of this Trust Agreement.

II. DEFINITIONS.

The following words and phrases have the special meanings indicated. Other words and phrases with special meanings are defined where they first appear unless their meaning is apparent from the context.

A. "Joint Board of Trustees" means the group of individuals appointed to administer the Trust as provided hereafter. As a group they are referred to as the "Board". The individual members are referred to as the "Trustees."

B. "Union" means GRAPHIC COMMUNICATIONS UNION DISTRICT COUNCIL NO. 2, or any successor thereto.

C. "Association" means PRINTING INDUSTRIES OF NORTHERN CALIFORNIA, or any successors thereto.

D. "Employer" means any business entity which is required by a Contribution Agreement to make payments into this Trust (but only with respect to the employees subject to that Contribution Agreement); but it shall not include any entity whose participation in the Plan was terminated by the Board under paragraph F of Article IX after the effective date of such termination.

The Board may require any Employer to sign an agreement acceptable to it before crediting the Employer's contributions or providing benefits attributable thereto, and may terminate an entity's status as an Employer as provided in paragraph D (13) of Article VI and paragraph F of Article IX.

E. "Contribution Agreement" means any subscription agreement, collective bargaining agreement or other written agreement approved

by the Board requiring contributions hereto.

F. "Participant" means any employee who is eligible for benefits or otherwise qualifies as such under ERISA. "Beneficiary" means any other person designated in accordance with the Plan who is or may become entitled to benefits thereunder.

G. "Plan Year" means the fiscal year on which the records of the Plan and Trust are kept as established from time to time by the Board.

H. "Fund Custodian" means any bank or other institution which may be designated by the Board as custodian of Trust assets in accordance with Article VII.

I. "Investment Manager" means any person which qualifies as an investment manager under ERISA and is appointed as such by the Board in accordance with Article VIII.

III. <u>OBLIGATIONS OF EMPLOYERS</u>.

A. <u>Payment of Contributions</u>. All Employer contributions required by a Contribution Agreement shall be payable on the Due Date specified in paragraph B below, and shall be payable at such place where the Trust's principal place of business is located as the Board may from time to time specify; payment elsewhere shall be permitted only with the Board's prior written approval.

Payments shall be accompanied by complete reports on forms furnished or approved by the Trust so that the contributions can be allocated accurately. The Employer may be compelled by the Trust or its assignee, by way of subpoena, civil discovery or other legal proceeding, to prepare, submit and file with the Trust proper reports for any period for which the Employer has previously failed to file.

B. <u>Due Date</u>. The Due Date for an Employer's contributions for a month shall be the 20th day of the month immediately following the month for which the contribution is made.

C. <u>Delinquent Contributions</u>. It is recognized and acknowledged that the regular and timely payment of Employer contributions is essential to the efficient and fair administration of the Trust and the maintenance of Plan benefits. If Employers do not make timely payments, the Trust loses the investment return it should have received, and incurs additional administrative expense in the form of letters, telephone calls, and other collection expenses. The Trust is also delayed or prevented from processing claims by employees for benefits under the Plan. The

Trust's collection expenses, loss of return on investment, and inability to pay benefits constitute damages arising from an Employer's default in making timely payments, and these damages cannot be allowed to deplete the contributions promptly paid by other Employers. Therefore, the following provisions shall apply with respect to delinquent contributions, except that if collective bargaining agreements covering a majority of the Participants provide for lower rates of liquidated damages and/or interest, then those lower rates shall apply instead unless a legal action is filed to collect the delinquency.

(1) When Employer Considered Delinquent. Any Employer shall be considered to be delinquent if late payment or underpayment occurs, whether because it (a) fails to submit a contribution report form with the full contribution by the close of business on the Due Date, or (b) fails to submit contributions on behalf of all employees for whom contributions are required under its Contribution Agreement, or (c) fails to properly compute the contributions according to the applicable contribution formula, or (d) otherwise fails to meet its obligations hereunder.

(2) Liquidated Damages. It would be extremely difficult and impractical to fix the actual expense and damage to the Trust, over and above attorney's fees and interest on the delinquent contributions, for each Employer's default. Therefore, the following amount of liquidated damages are established. Such amounts are due and payable to the Trust as liquidated damages, and not as a penalty, and such liquidated damages may be waived only

pursuant to rules and regulations adopted by the Board unless a collection suit against the Employer has been filed, in which case the Board may waive liquidated damages as appropriate under the circumstances.

(a) In the case of delinquent contributions which are paid before the filing of a lawsuit to collect them, the amount of liquidated damages shall be 5% of the delinquent contributions, with a minimum liquidated damages of $50.00 per contribution period and a maximum of $750.00 per contribution period.

(b) If a lawsuit to collect the delinquent contributions is filed, the amount of liquidated damages shall be the greater of the following amounts:

(i) 20% of the delinquent contributions as of the date of the filing of the lawsuit, or $50.00 per contribution period, whichever is greater; or

(ii) interest on the amount of the delinquent contributions until the dates they are paid in full at the rate referred to in subparagraph (3).

(3) <u>Interest</u>. Delinquent contributions shall accrue interest from the Due Date until paid at the rates prescribed from time to time pursuant to the Underpayment Rate of Internal Revenue Code Section 6621, or such other reasonable rates as the Board may from time to time establish. Interest on delinquent contributions may be waived, but only pursuant to rules and regulations adopted by the Board, unless a collection not against the Employer has been filed in which case the Board may waive interest as appropriate

under the circumstances.

(4) Special Rules for Repeated Delinquencies. The Board may, in the event of repeated delinquencies by the same Employer, make special rules applicable to the Due Date of said Employer's contributions and may require the Employer to post a bond or other security against further delinquencies.

D. Recordkeeping and Audits. Each Employer shall maintain such time records, checks, check stubs, quarterly or other pertinent government returns, or such other records relating to employment for which contributions are payable hereunder, sufficient (1) to determine whether it has satisfied all obligations to the Trust and (2) to permit the Trust to comply with all applicable laws. These records shall be maintained within California for a period of not less than seven years following the end of the calendar year in which the employment occurs. If an Employer fails to keep records adequate to determine its obligations, for collection purposes there shall be a rebuttable presumption, at the option of the Trust, that all sums paid by such Employer to Participants, former members of the Union, or individuals who subsequently became members of the Union were wages for work for which contributions were payable to this Trust.

The Board, or its authorized representatives, may require any Employer to submit to it any information relevant to the administration of the Trust, and each Employer specifically waives any privilege it may have with respect to such information. Upon notice in writing, an Employer must permit an authorized Trust

representative to enter upon the premises of such Employer at a mutually agreeable time during regular business hours to examine and copy such records as may be necessary to determine whether the Employer is making full and prompt payment of all sums required to the Trust. Such examination may be undertaken pursuant to a routine payroll audit program or on an individual basis. The records to be made available to the Board, or its representative, shall include, but not be limited to, time cards for all employees, payroll journals, individual earnings records for all employees, payroll check registers, job cost records, cancelled payroll checks, copies of the Employer's federal, state and local payroll tax reports, W-2s and Form 1099s, federal and state income tax returns, cash disbursement journals including cancelled checks and all supporting invoices or other documents, cash receipts journals (including bank statements), copies of contracts, general ledger, worker's compensation insurance reports, fringe benefit reports of other trades, all other documents reflecting the hours and wages and/or piecework records of employees (whether or not such documents are privileged), and any other books, records, paper or reports that may be necessary to complete the auditor's determination or provide additional explanation. In the event that an examination of the Employer's records reveals that full and prompt payment of all sums due is not being made, then such Employer shall reimburse the Trust, upon demand of the Board, for the costs of said examination in addition to any other obligations it may have hereunder. The Board shall have the authority, however, to waive all or part of

such costs if the discrepancy is minor and not wilful, or for other good cause shown.

The Employer's obligations with respect to recordkeeping and audits for the period it is an Employer hereunder shall continue for a period of six (6) years beyond any date as of which it ceases to be an Employer.

E. Collection Actions. The Trust may institute legal proceedings to collect delinquent Employer contributions, liquidated damages, interest, attorney's fees and other costs of collection, including collection agency fees. Such proceedings may be instituted in the name of the Trust or the Board, or the claim may be assigned to a third person for collection. The county in which the particular Employer contribution is payable (as determined under paragraph A hereof) shall be a proper county in which to institute legal proceedings to collect all sums owing by an Employer.

The Employer shall reimburse the Trust, or its assignee, for all reasonable attorney's fees, audit fees, court costs, collection agency fees, and all other reasonable expenses of whatever nature incurred in connection with such suit or claim, including any and all appellate proceedings therein. It is recognized that the extent of legal services necessarily incurred in the collection of required Employer contributions may in certain cases have no relation to the fact that the amount of the delinquency is relatively small.

In the event an applicable collective bargaining agreement or

Contribution Agreement contains provisions relating to collections that specify additional remedies, or obligate the delinquent Employer to greater amounts of liquidated damages, interest, attorney's fees or other items than those set forth herein, the Board, at its option, may pursue the additional remedies or impose the greater charges.

F. Mistaken Contributions. Within the discretion of the Board and to the extent permitted under the Code, ERISA, and regulations issued under those laws, mistaken Employer contributions will be treated as follows:

(1) Calculation Mistakes. If the Employer had a written Contribution Agreement requiring contributions to the Trust (including an expired agreement which the Employer was obligated to honor under federal labor laws), but errors were made in the calculation of the amount due under the written agreement, the following rules shall apply:

(a) Subject to the limitations set forth below, Employer contributions made to the Trust as a result of such a mistake may be returned to the Employer, without interest or other appreciation, within six months after the Board determines that the contribution was made by such a mistake.

(b) Employer contributions made to the Trust as a result of such a mistake may not be returned to the Employer unless a written refund request is submitted to the Trust by the Employer within four years of the Due Date of the report form containing the erroneous contributions.

(c) If contributions are made on behalf of a person not within the unit covered by a collective bargaining agreement or the group covered by a Contribution Agreement approved by the Board, in no event will the Trust provide benefits based on such erroneous contributions, and the Trust may recover from the Employer any losses resulting from benefits previously paid as a result of the erroneous contributions.

(d) If contributions are made on behalf of a person in the unit covered by a collective bargaining agreement or the group covered by a Contribution Agreement approved by the Board, but such contributions are in excess of the amount required under the Employer's Contribution Agreement, the Trust shall not be obligated to provide benefits dependent upon such erroneous contributions, and may recover from the Employer any losses resulting from benefits paid as a result of the mistaken contribution by assigning to the Employer any right of recovery the Trust may have against the recipient, provided, however, that if the person has already retired and had his benefits calculated based on the erroneous contributions, the Board may refuse to refund any such mistaken contributions.

(2) <u>No Written Agreement</u>. If the Employer did not have a written Contribution Agreement requiring contributions to the Trust, the following rules shall apply:

(a) The Trust shall not be obligated to pay benefits based on any erroneous contributions.

(b) The Board, in its sole discretion, may have the

Trust pay the amount of the erroneous contributions, without interest or other appreciation, to either the Employer or the employee on whose behalf the contributions were made, and such payment shall relieve the Trust from all liability or responsibility to any person or entity whatsoever for any such erroneous contributions.

G. Cooperation With Board. Whenever requested by the Board, the Employer will distribute to all Participants currently in its employ such information as the Board deems necessary to carry out its obligations. That distribution shall be made in such manner as the Board may specify and without charge to either the Participants or the Trust. Any Employer which wilfully fails to comply with any such reasonable request of the Board shall be liable for any penalties or damages which are thereby incurred.

H. Limitation On Liability Of Employers. Employers and their bargaining representatives shall have only such liabilities to the Trust as are set forth or authorized under this Trust Agreement, the Plan or under their Contribution Agreements. They shall have no other liabilities for the operation or obligations of the Trust, nor for the failure of other Employers to fulfill their obligations to the Trust, except as specifically imposed under ERISA or other applicable laws.

I. Rules and Regulations. The Board is authorized to adopt from time to time additional rules and regulations relating to the Employer's obligations to make timely contributions to the Trust and the means by which the Trust may enforce such obligations.

IV. FIDUCIARIES.

A. General Rules. The Board and the individual Trustees who are its members shall be the "named fiduciaries" required by ERISA. Other persons shall be fiduciaries only to the extent they have discretionary authority or discretionary control respecting management of the Trust or Plan; or exercise any authority or control respecting management or disposition of Trust assets; or have any discretionary authority or discretionary responsibility in the administration of the Plan; or render investment advice for a fee or other compensation, direct or indirect, or have any authority or responsibility to do so. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan and Trust.

It is not intended that any Employer or any firm or association representing any Employer, or any Union, or any attorney, accountant, broker, actuary, office personnel, professional administrator or consultant (other than an Investment Manager) shall be a "fiduciary" simply as a result of performing services for the Trust pursuant to agreement with the Board. Therefore, such persons shall not perform acts of the type set forth above which would make them fiduciaries except as specifically authorized by the Board.

B. Fiduciary Standards. All fiduciaries with respect to the Plan (whether or not "named fiduciaries") shall discharge their duties solely in the interest of the Participants and Beneficiaries in furtherance of the Trust's purpose as set forth in Article I

above and in accordance with the requirements of this Trust Agreement, the Plan and ERISA. In so doing, they shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

C. Allocation of Fiduciary Responsibilities. Fiduciary responsibilities may be allocated or delegated as follows, so long as the allocation or delegation meets the fiduciary standards set forth above and is evidenced by an appropriate resolution of the Board:

(1) Any responsibility to manage or control Plan assets may be allocated only among the Trustees and any Fund Custodian, except insofar as such responsibility is delegated to an Investment Manager as provided hereafter.

(2) Other responsibilities may be allocated or delegated to any person, but any Participant or Beneficiary whose claim for benefits is denied shall have the right to have the denial ultimately reviewed by the Board itself except insofar as it may be permissible under ERISA for any other firm or person to make a final decision on review.

D. Liability of Fiduciaries. In no event will fiduciaries be liable with respect to a breach of a fiduciary duty if such breach was committed before they became fiduciaries or after they ceased to be fiduciaries. Furthermore, to the fullest extent permitted by law, no fiduciary shall be liable for any act or

omission of any other person. Specifically:

(1) If a specific responsibility, obligation or duty relating to control or management of Plan assets is allocated among the Trustees and/or any Fund Custodian or any Investment Manager, then one to whom such a function has not been allocated shall not be liable either individually or as a trustee for any loss to the Trust arising from any acts or omissions on the part of those to whom such function has been allocated.

(2) Upon the proper allocation or delegation of any other fiduciary responsibility, the Trustee shall not be liable for the acts or omissions of the person or persons to whom such responsibility has been allocated or delegated, provided that there has been no violation of the fiduciary standards set forth above with respect to such allocation or delegation, nor with respect to the establishment or implementation of procedures relative thereto, nor in continuing the delegation.

Nothing herein shall be construed as limiting fiduciaries' liability for a breach of fiduciary responsibility of another fiduciary with respect to the Plan if (a) they knowingly participate in or undertake to conceal an act or omission of such other fiduciary knowing it is a breach, (b) by failing to comply with fiduciary standards in the administration of their fiduciary responsibilities, they enable such other fiduciary to commit a breach, or (c) they have knowledge of a breach by such other fiduciary and fail to make reasonable efforts under the circumstances to remedy the breach.

E. Compensation and Expenses. To the extent approved by the Board, fiduciaries may receive reasonable compensation for services rendered by them. However, no fiduciary who already receives full-time pay from an Employer or an association of Employers whose employees are Participants in the Plan, or from an employee organization whose employees are Participants in the Plan shall receive compensation for his services except insofar as permitted by ERISA.

To the extent authorized by the Board, all fiduciaries may be reimbursed for expenses actually and properly incurred in accordance with the performance of their duties hereunder, or given an appropriate advance against such reimbursement subject to immediate repayment if the advance should exceed the amount to which they are entitled hereunder. Expenses for which reimbursement may be authorized shall include, without limitation, those incurred in attendance at meetings and other functions of the Board or its committees, or in attendance at institutes, seminars, conferences or workshops relating to matters of common interest to trusts such as this, or in defending against legal actions which do not result in a judgment that the Trustee has violated any ERISA-imposed responsibility, obligation or duty.

F. Bonds and Insurance. No bonds or other security shall be required of any fiduciary or other person except as required by law, but the Board may direct that such other bonds be obtained as it deems appropriate for itself or others. The Board may also direct the purchase of such insurance as it deems appropriate for

itself or others. The cost of such bonds or insurance shall be paid by the Trust; provided however, that any bonds or insurance purchased with Trust funds which insure against liability or losses occurring by reason of the act or omission of a fiduciary shall permit recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary. In addition, any fiduciary may acquire such additional insurance as it deems appropriate to protect itself (including, if available, a waiver of the carrier's retained right of recourse in any insurance policy purchased with Trust funds) so long as the cost of such insurance is not paid by the Trust.

G. Standard of Review. The Board is granted full discretionary authority to determine benefits and to construe the terms of the Plan and this Trust Agreement. Any action taken by the Board within its authority granted by this Trust Agreement shall be binding on all persons affected to the fullest extent permitted by law. No action of the Board shall be revised, changed or modified by any arbitrator or court unless the party seeking such action has exhausted all of its administrative remedies, and is able to show by clear and convincing evidence that the Board's decision was an abuse of discretion in light of the information actually available to it, and considered by it, at the time of its decision. The purpose of this provision is to make Board actions binding on all persons to the fullest extent permitted by law. Therefore, if any of the foregoing provisions should be held to go beyond what is legally permissible, the remaining provisions shall

nevertheless be given effect insofar as the law permits.

V. APPOINTMENT AND PROCEDURES OF JOINT BOARD OF TRUSTEES.

A. Number of Trustees. The Board shall be composed of an even number of individuals, half of whom shall be known as "Union Trustees" and half of whom shall be known as "Employer Trustees". The total authorized number of Trustees is eight, but this number may be changed from time to time by the Board, so long as the positions open to Employer Trustees and Union Trustees remain equal in number.

The party appointing a Trustee may also appoint an alternate for such Trustee to serve at the pleasure of the appointing party. Any such appointment shall be made by written instrument delivered to the Board. In the event that a Trustee is absent from a Board meeting, or is not readily available to sign any written consent authorized hereunder, his alternate may act for him.

B. Method of Appointment of Union Trustees. All Union Trustees shall be appointed by and serve at the pleasure of the Union. Appointments and removals shall be made by written instrument delivered to the Board. If a vacancy is not filled within sixty (60) days after notice to the appointing party, the remaining Union Trustees shall fill the vacancy within thirty (30) days after that sixty-day period expires; and if they fail to do so, any Trustee or Participant may petition the appropriate federal court to fill the vacancy. Any person appointed by the Union Trustees or a court due to failure of the Union to fill the vacancy shall serve at the Union's pleasure the same as though appointed by it.

C. Method of Appointment of Employer Trustees. All Employer Trustees shall be appointed by and serve at the pleasure of the Association. Appointments and removals shall be made by written instrument delivered to the Board. If a vacancy is not filled within sixty (60) days after notice to the appointing party, the remaining Employer Trustees shall fill the vacancy within thirty (30) days after that sixty-day period expires; and if they fail to do so, any Trustee or Participant may petition the appropriate federal court to fill the vacancy. Any person appointed by the Employer Trustees or a court due to failure of the Association to fill the vacancy shall serve at the Association's pleasure the same as though appointed by it.

D. Term of Office. Each Trustee shall begin serving at the time specified in the instrument appointing him (or upon receipt of that instrument if it does not specify a time), but not before signing a written acceptance of his appointment. The Trustee shall serve until his successor assumes office, but shall have the right to resign at any time by written instrument delivered to the Board.

E. Officers. The officers of the Board shall be a Chairman and a Secretary, one of which offices shall always be held by an Employer Trustee and one of which shall always be held by a Union Trustee. The Board may provide for such additional officers as it deems appropriate.

F. Meetings. The Board shall determine the time and place for regular periodic meetings, which shall be held at least semi-annually. Special meetings may be called by either the

Chairman or Secretary or by any two Trustees upon at least five days written notice to all other Trustees. A meeting shall be valid even if proper notice is not given if each Trustee then serving (or his alternate) is present or if all absent Trustees, not including absent alternates, waive notice in writing either before or after such meeting. The Board may also act without a meeting by written instrument executed by all Trustees.

G. Quorum. To constitute a quorum, there must be present at least one-half of the Employer Trustees then serving and one-half of the Union Trustees then serving.

H. Method of Voting.

(1) Proxies. Any Trustee may give a written proxy to any other Trustee who is a member of his group, but the proxy may not be used if either the Trustee or the Trustee's alternate is present at the meeting.

(2) Employer Trustees. A number of votes equal to the number of authorized Employer Trustees shall be shared equally between the Employer Trustees who are either present in person or who have given a valid written proxy to an Employer Trustee who is present and entitled to vote that proxy at the meeting.

(3) Union Trustees. A number of votes equal to the number of authorized Union Trustees shall be shared equally between the Union Trustees who are either present in person or who have given a valid written proxy to a Union Trustee who is present and entitled to vote that proxy at the meeting.

(4) Majority Vote. All matters shall be decided by a

majority vote of the votes cast.

(5) Deadlock. A deadlock shall be deemed to have occurred with respect to any matter voted upon if there is a tie vote by the Board.

I. Arbitration of Deadlocks. In the event of a deadlock, the matter shall be submitted to arbitration upon the request of any Trustee. The Board shall agree upon a person to serve as arbitrator. If an agreement is not reached within 21 days of the request for arbitration, any Trustee may petition the Federal Mediation and Conciliation Service to appoint the arbitrator, and, if such Service does not appoint an arbitrator within 21 days of the petition to it, any Trustee may petition the United States District Court with jurisdiction over the area where the Trust has its principal office to appoint the arbitrator. The arbitrator shall determine the procedures to be followed in the arbitration.

All expenses incurred by the Board as a whole, as opposed to one group of Trustees, in connection with the dispute, including legal fees of the Board's counsel, shall be paid by the Trust. No party other than the Board, such as the Union, Association or one group of Trustees, who may participate in the arbitration may recover its costs of advocacy unless specifically ordered by the arbitrator or required by law.

Unless otherwise prohibited hereunder, any matter within the jurisdiction of the Board may be submitted to the arbitrator as provided above, but unless specifically provided elsewhere hereunder the arbitrator shall have no power to add to or subtract

from, alter or change the provisions of this Trust Agreement, the Plan or any Contribution Agreement. The decision of the arbitrator, so long as it does not go beyond the scope of his authority, shall be final and binding upon all parties to the dispute.

J. Establishment of Administrative Office. The Board shall establish an administrative office and shall staff such office in such manner as it deems appropriate, either with its own employees or by contract with such business entity as it may select. It may also establish such additional offices as it may from time to time deem necessary. The administrative office and personnel and costs related thereto (as well as other appropriate administrative services and costs) may be shared with other trusts subject to ERISA to reduce the expenses of administration, achieve greater efficiency, and/or provide better service to Participants and their Beneficiaries; the basis of sharing shall be such method as the Board may deem appropriate and reasonable.

K. Execution of Instruments. The Board shall authorize such persons as it deems appropriate to execute checks drawn on any bank accounts maintained by it, or to issue checks bearing facsimile signatures of such persons. Furthermore, any two Trustees, one of whom is an Employer Trustee and one of whom is a Union Trustee, may execute any contracts or other legal documents on behalf of the Trust if so authorized by the Board. Instructions to any Fund Custodian or Investment Manager, or other communications, shall be similarly executed or may be executed in such other manner as the Board may authorize.

Any person may rely on any documents executed in accordance with this provision as having been duly authorized by the Board and executed in accordance with the terms of this Trust Agreement.

Legal title to Trust assets may be held in the name of the Fund Custodian, and if it is, only the Fund Custodian need execute any documents to acquire or dispose of such assets.

VI. AUTHORITY OF JOINT BOARD OF TRUSTEES.

A. General Authority. Subject to its powers of allocation and delegation set forth elsewhere hereunder, the Board shall have exclusive authority to control and manage the operation and administration of the Trust and its assets, and shall be the "Administrator" required by ERISA.

B. Establishment of Plan and Claim Procedures. The Board shall establish the benefits to be provided, the eligibility requirements therefor, and all other matters appropriate to the Plan, including procedures for applying for benefits and remedies for the redress of claim denials which comply with the requirements of ERISA. It may from time to time amend any or all of the provisions of the Plan in the manner set forth hereafter.

C. Records and Reports. The Board shall keep on file at the principal administrative office, and in such other places as may be necessary to make available all pertinent information to Participants and Beneficiaries, a copy of this Trust Agreement, the Plan and all annual and interim reports made in connection therewith; and shall cause to be furnished to each Participant and Beneficiary all descriptions and information required by ERISA. It shall also file with the appropriate governmental agency all forms, reports and other information required by ERISA. Insofar as required by ERISA, the Board shall make copies of all documents described above, and other documents under which the Plan is established or operated, available for examination by any Participant or Beneficiary and shall furnish copies of such

documents to any Participant or Beneficiary upon written request, and may in its discretion charge such reasonable amounts therefor as are permissible under ERISA.

Whenever required by law, or whenever else it deems it advisable, the Board shall engage, on behalf of all Participants, an independent qualified public accountant to prepare an annual audit and give his opinion as to whether the financial statements of the Trust are presented fairly and in conformity with generally accepted accounting principles applied on a consistent basis with that of the preceding year.

D. Miscellaneous Powers. The Board may exercise all other lawful powers appropriate to the exercise of its authority hereunder, including the following:

(1) To pay all Trust expenses;

(2) To establish such rules and regulations as may be necessary in the administration of the Trust;

(3) To borrow money to carry out the purposes of this Trust and to pledge, assign or hypothecate any of the Trust assets to secure such loan;

(4) To sue or be sued on behalf of and in the name of the Plan and/or Trust, which shall be the only necessary party plaintiff or defendant in any legal action, and service of process upon it may be made upon any Trustee;

(5) To accept, compromise, arbitrate or otherwise settle any obligation, liability or claim involving this Trust, including, but not by way of limitation, any claim for contributions or other

sums payable hereto, and to enforce or contest any other obligation, liability or claim by appropriate legal proceedings if, in its sole discretion, it is in the interest of the Trust to do so, or to assign any such claim and allow the assignee to institute legal or arbitration proceedings in its own name to enforce collection;

(6) To require any person with obligations or rights hereunder to furnish, or permit an audit of, any reasonable information, data, and documents which are pertinent in verifying the accuracy of contributions and acting upon claims for benefits, or which are otherwise pertinent in administering this Trust;

(7) To publish, file and distribute all reports required by law;

(8) To construe any of the terms or provisions of the Trust or Plan, and any such interpretation shall be binding on all persons;

(9) To determine all questions relating to eligibility for benefits, how they will be provided, and similar questions, including the establishment of rules relating to the extent, if any, for which credit will be given for required contributions not actually received by the Trust, and the Board's decisions on such questions shall be binding on all persons, except as may be otherwise specifically provided herein or in regulations duly adopted by the Board;

(10) To retain or employ attorneys, accountants, office personnel, professional administrators and consultants

and other suitable agents and employees; and unless otherwise provided by ERISA, it shall be immaterial that the persons so retained or employed have been retained or employed by anyone else with rights or obligations hereunder. Any agreement with such persons may be for any period of time the Board deems appropriate, but it may terminate any such agreement at any time, even if by so doing this Trust might be liable for breach of contract;

(11) To provide Plan benefits either directly from Trust assets or through one or more contracts with organizations legally qualified to enter into contracts providing Plan benefits (including insurance companies), or partly by direct payment and partly through such contracts. The Board shall exercise all powers granted to contract holders under any such contract except and until it relinquishes them in writing. (Nothing in this Trust shall be construed as making any organization with which this Trust contracts a party to this Trust Agreement, nor as imposing any obligations on it; instead, such organization's obligations shall be only such as are contained in its agreements with the Board);

(12) To enter into reciprocal agreements with joint boards of other trusts providing pension benefits, so that persons may move from one trust's jurisdiction to another's without loss of coverage and to agree to the transfer of funds from one such trust to another if necessary or advisable in connection therewith;

(13) To decline or terminate the participation of a particular group of individuals if (a) the Union and the Employer fail to provide the Board with a copy of their Contribution

Agreement; or (b) the language of the contribution provisions in the Contribution Agreement does not meet the requirements, if any, established by the Board; or (c) there are repeated delinquencies or other failures to comply with the terms of the Plan or Trust Agreement with respect to those individuals;

(14) To enforce all obligations of Employers to make contributions to the Trust by any means it deems appropriate, including hiring attorneys to pursue such claims or assigning them to a collection agency;

(15) To adopt uniform, specific, reasonable and diligent collection procedures to deal with delinquent Employers, including special rules for repeatedly delinquent Employers and formulas to be applied where an Employer's records are not adequate to precisely determine the amount of required contributions;

(16) To establish rules and regulations providing for permissive or mandatory arbitration proceedings to determine an Employer's obligations with respect to what appear to be payment delinquencies or other failures to comply with an Employer's obligations hereunder including the establishment of a permanent arbitrator or board of arbitrations to make such determinations.

E. Limitation on Liability. The Trustees shall discharge their duties hereunder in accordance with the provisions and standards set forth hereto. It is to be noted, however, that trusts of this type are relatively recent in origin, and their management presents problems concerning which there has been only limited experience. Also, individuals serving as Trustees hereunder

generally do so by virtue of their regular employment and without compensation. For these reasons, the parties desire to limit the obligations of the Trustees, and to hold them harmless against any liabilities hereunder, to the fullest extent permitted by law. Therefore, subject to the ERISA-imposed limitations set forth below, Trustees shall not be liable for any act or omission to act, so long as it is not committed intentionally or with indifference to the best interest of Participants or their Beneficiaries, and the Trust shall exonerate, defend, reimburse and hold them harmless against any such act or omission to act. As examples Trustees shall be protected:

(1) In acting upon any papers, documents, data or information reasonably believed by them to be true and accurate and to be made, executed, delivered or assembled by the proper parties;

(2) For any act concerning which they reasonably rely upon the opinion of legal counsel;

(3) For the act of any agent, employee, consultant, actuary or attorney chosen and retained with reasonable care; or

(4) For any act or omission of other Trustees in which they do not join.

If any of the foregoing provisions should be held by a court of competent jurisdiction to go beyond what is legally permissible, the remaining provisions shall nevertheless be given effect insofar as the law permits, it being the intention that any invalid provisions be severable from the others. Furthermore, except

insofar as specifically permitted by ERISA, the foregoing provisions shall not apply to relieve Trustees from responsibility or liability for any responsibility, obligation or duty established by ERISA, but shall only apply to such additional responsibilities, obligations or duties as may be performed by them hereunder in good faith and with reasonable care.

VII. FUND CUSTODIAN.

A. Appointment. The Board may select a bank, trust company, insurance company or other qualified institution to act as Fund Custodian hereunder and, if a bank or trust company is selected, may designate it as a corporate co-trustee. The selection shall be evidenced by one or more separate written agreements in which the Fund Custodian agrees to act, which shall specify the Fund Custodian's fees and other charges and such other matters as may be agreed upon; said agreements are incorporated herein by reference and made a part hereof, and if there is any inconsistency between their provisions and the provisions of this document, the former shall govern to the extent that they are lawful.

If no Fund Custodian is selected or acting, any powers given it below shall remain with the Board, subject to its power of delegation.

B. Resignation or Removal. Any Fund Custodian may be removed by the Board at any time upon delivery to the Fund Custodian of a written notice of removal, and any Fund Custodian may resign at any time by delivering a written notice of resignation to the Board.

The removal or resignation shall be effective on the date specified in the notice, but such date shall be not less than ninety (90) days from the date the notice is delivered unless the other party consents to an earlier date.

## VIII. FUNDING AND INVESTMENTS.

A. Funding and Investment Policies. The Board shall establish and carry out funding and investment policies and methods consistent with the objectives of the Trust and the requirements of ERISA, shall review such policies and methods at appropriate intervals and shall communicate them to any Fund Custodian and any Investment Manager.

B. Investment Decisions. The Board may itself invest and otherwise manage Plan assets, or it may delegate all or some of these management powers (including the power to acquire and dispose of Plan assets) either to a Fund Custodian or any other person, provided that such Fund Custodian or person qualifies as an Investment Manager under ERISA and acknowledges in writing that it is a fiduciary with respect to the Plan and Trust. The appointment, selection and retention of any Investment Manager, or the delegation of investment authority to a Fund Custodian shall be solely the responsibility of the Board, and shall be revocable by it at any time. Any person to whom management powers are delegated shall exercise its powers in accordance with the funding policies and any investment policies established by the Board, but shall have no responsibility for the establishment or adequacy of such policies.

C. Investment Standards. Investments shall be prudent ones and shall be diversified so as to minimize the risk of large losses unless it is clearly prudent not to do so. They shall not be in conflict with ERISA's "prohibited transactions" provisions or its

limitations with respect to acquisition and holding of "employer securities" or "employer real property" (as those terms are defined in ERISA). No fiduciary shall cause the Trust to engage in transactions which violate these requirements and any instructions from others upon which any Fund Custodian must rely shall be consistent with these requirements.

D. Investment Powers.

(1) General Powers. The Trust assets, or any part thereof, may be invested in securities issued by the United States Government; in bonds; in common or preferred stocks; in other securities listed on any exchange or traded in any over-the-counter market, including shares of mutual investment companies; in pooled investment portfolios managed by insurance companies; in improved real estate; in notes; in mortgages; in certificates of deposit of any bank, including the Fund Custodian's; in commercial paper; in bankers' acceptances (excluding those of any Fund Custodian) or in any other properties in which this Trust may lawfully invest. If any assets are ever held in which this Trust may not properly invest, they shall be disposed of as promptly as is prudent under the circumstances. Except as otherwise authorized under ERISA, the indicia of ownership of Trust assets shall at all times be held within the jurisdiction of the District Courts of the United States.

(2) Insurance Contracts. The Board may purchase or invest in one or more insurance policies, annuity contracts or other contracts in such form or forms, whether or not they are

group contracts, of such life insurance company or companies as the Board may select (all of which policies or contracts are hereinafter referred to as "Contract" or "Contracts"), and apply all or part of the Trust's assets to the Contract or Contracts. The following provisions will apply to any such Contracts:

(a) Any Contract may provide for the allocation of amounts received by the insurance company thereunder solely to said insurance company's general account or solely to one or more of its separate accounts (including separate accounts maintained for the collective investment of assets of qualified retirement plans) or to the insurance company's general account and one or more of such separate accounts, provided that if any Contract shall provide for the allocation of amounts to one or more separate accounts, the Board may appoint the insurance company as Investment Manager to the extent that amounts held by the insurance company under the Contract shall be deemed Plan assets under ERISA and the rules and regulations thereunder.

(b) Under any Contract, the insurance company shall have exclusive responsibility for the investment and management of any amounts held under such Contract subject to the right of the Board to specify how amounts under the Contract are to be allocated among the accounts provided for in the Contract, provided that the insurance company may be given responsibility for determining the allocation of amounts among the various separate accounts provided for in the Contract.

(c) Any Plan assets managed by the insurance company may be invested and reinvested without regard to any limitations of state law on investments by fiduciaries, and without distinction between principal and income, in shares of stock (whether common or preferred) or other evidence of ownership; in bonds, debentures, notes or other evidences of indebtedness, whether such obligations are secured or unsecured by mortgages or other liens on real or personal property wherever situated (including any part interest in a bond and mortgage or note and mortgage, whether insured or uninsured); and in other kinds of real or personal property, or part interests therein (including any partnership interest) whether foreign or domestic; and in any rights, warrants and options to acquire any of the foregoing. The insurance company shall have all of the powers with respect to the assets of the Plan under a Contract as the Board has pursuant to this Article with respect to Trust assets. Notwithstanding the foregoing, none of the assets held by an insurer under any Contract, whether or not they shall be deemed assets of the Plan under ERISA, shall be part of the Trust's assets.

(3) Specific Powers. Whoever holds title to Trust assets shall have all rights and powers with respect to investing the Trust property that an absolute owner would have, subject only to any written directions previously received from another fiduciary authorized hereunder to give such directions. These investment powers shall include, without limitation, the following powers in addition to those set forth elsewhere hereunder and others given

by law:

(a) To hold in cash in a non-interest bearing account such portion of the Trust assets as may be reasonably required for the day-to-day administration of the Trust and disbursement of benefits, by depositing the same in any bank (including any bank acting as Fund Custodian hereunder) subject to the rules and regulations governing such deposits. Additional cash shall be placed in interest-bearing accounts and/or obligations (which may be with the Fund Custodian) until such time as it is otherwise invested;

(b) To participate in any plan of lease, merger, consolidation, exchange, foreclosure or reorganization affecting securities held hereunder at any time;

(c) To deposit stocks under voting agreements;

(d) To subscribe for stock or bond privileges;

(e) To vote with respect to all securities or other assets in person or by proxy, except that where an Investment Manager has been appointed and is acting, proxies and other shareholder material with respect to assets under its supervision will be forwarded to it, and it shall be the Investment Manager's responsibility to vote the proxies;

(f) To register securities in the name of a nominee, or to hold the same unregistered and in such form that they will pass by delivery;

(g) To lease, repair, alter, or improve real estate or other assets;

(h) To sell any securities, real estate, or other assets at public or private sale for such prices and upon such terms as it may deem proper, without liability on the part of the purchasers to see to the application of the purchase money;

(i) To borrow money and to secure the repayment thereof by mortgage on real estate, pledge of securities, or otherwise, without liability on the part of the lenders as to the application of the assets loaned;

(j) To invest Trust assets collectively with funds of other trusts in one or more of the investment funds for employee benefit trusts established by any Fund Custodian or any other common or commingled fund now or hereafter maintained by any Fund Custodian as the same may be amended from time to time; and if any portion of the Trust is so invested the declaration creating such funds shall be deemed to be incorporated into this Trust Agreement the same as if fully set forth herein;

(k) To lend stock certificates and other securities constituting part of the Trust assets to securities brokers and others; provided, that the terms and conditions of each such loan shall be established in accordance with, and shall comply with, the Plan, this Trust and all applicable rules, regulations and laws governing the Board, the Plan and this Trust.

IX. AMENDMENT, TERMINATION AND MERGER.

A. Amendments. The Trust or Retirement Plan may be amended at any time by the Board. It may amend them in whole or in part, and at any time, and all persons with rights or obligations hereunder shall be bound thereby. However, no amendment shall alter or negate the Trust purpose set forth in Article I or any applicable and lawful provision of a Contribution Agreement previously approved by the Board. Amendments shall be made by written instrument signed by a majority of the Union Trustees and a majority of the Employer Trustees. Only amendments affecting the rights or obligations of a Fund Custodian shall require its consent.

B. Mandatory Amendments. Amendment of the Trust or Plan shall be mandatory in the following situations:

(1) When necessary to assure compliance with ERISA or other applicable laws;

(2) When necessary to assure the tax-deductibility of contributions hereto under federal and state income tax laws;

(3) When necessary to assure (if possible) that this Trust remains tax exempt; that contributions to this Trust will not be deemed part of the "regular rate" at which an employee is employed for purposes of the Fair Labor Standards Act; and that such contributions will not be subject to deductions for purposes of any State Unemployment Insurance Act, the Federal Unemployment Insurance Act, the Federal Unemployment Tax Act, the Federal Insurance Contributions Act, or any similar legislation.

If the Trust or Plan is not amended when so required, the matter shall be submitted to arbitration as provided above, and, notwithstanding any other provision hereof, the Board shall be bound to execute such amendment of the Trust or Plan as the arbitrator deems necessary to satisfy the requirements of this provision.

C. <u>Termination</u>. The Board may terminate the Retirement Plan or this Trust at any time. The Trust shall not be terminated without terminating the Retirement Plan, but the Retirement Plan may be wholly or partially terminated without terminating the Trust. Termination shall be accomplished in the same manner as amendment.

Upon termination of the Trust, all obligations shall first be satisfied. The Board shall thereupon use the remaining Trust assets to provide Plan benefits in such manner as the Retirement Plan may provide, or in the absence of a Retirement Plan provision, to continue to provide Plan benefits in a manner permitted by ERISA for so long as Trust assets permit.

D. <u>Transfer of Assets to or from Another Benefit Trust</u>. Notwithstanding anything above to the contrary, the Board may, if the Trust is wholly or partially terminated, transfer the Trust assets or any portion thereof to the Trustees of any other trust or trusts which provide similar benefits, or may receive assets from any other such Trust which is wholly or partially terminated. However, failure of the Board to agree on any such action shall not be subject to arbitration.

E. Merger. By action of the Board, the Retirement Plan and Trust may be merged, consolidated with or otherwise combined with any other pension plan qualifying under the Code. Neither the Trust nor the Plan shall be merged or consolidated with, or transfer its assets or liabilities to, any other plan or trust, however, unless each Participant in the Plan would (if the Plan terminated) be entitled to receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer if the Plan had then terminated.

F. Termination of Individual Employers. The Board may terminate the participation hereunder of any Employer for failure to fulfill its requirement hereunder or failure to continue meeting the requirements for participation as an Employer hereunder as set forth above. The Board may establish regulations to protect the Trust in the event any Employer's particiaption terminates, whether voluntarily or involuntarily. Neither the terminating Employer, its employees nor their representatives shall have any right to the return of any monies contributed to the Trust by the termianting Employer, all of which monies shall continue to be held hereunder. Any terminated Employer shall remain liable to the Trust for any obligations incurred by it prior to the effective date of its termination.

X. MISCELLANEOUS.

A. Employer-Employee Relationship Not Affected. Nothing in this Trust shall give any employee the right to be retained in the employment of any Employer, and any employer-employee relationship relating to this Trust shall continue in the same manner as though this Trust had not been executed.

B. Rights and Remedies Limited. No person shall have any right, title or interest in or to Trust assets except as otherwise required by law or otherwise specifically provided hereunder.

C. Payments During Incapacity. Notwithstanding any other provisions hereof, if in the judgment of the Board any mental, physical or other incapacity prevents a person entitled to benefits from properly handling his own affairs, then until any benefits to which he is entitled have been claimed by a legally appointed representative, these benefits may, in the discretion of the Board, either be held for his benefit or paid to any one or more persons or institutions responsible for providing for his care and maintenance. The person entitled to the benefits shall promptly be sent notice of any such action.

D. Governing Law, Severability of Provisions and Interpretation. The provisions of this Trust Agreement shall be interpreted, administered and enforced according to applicable federal law, and to the extent that federal law is not applicable, according to the laws of California. If any such provision is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions shall continue to be fully

effective. When interpreting the provisions of this Trust Agreement, the intention that the Plan and Trust fully comply with the requirements of such laws shall be taken into account, and any ambiguities shall be resolved in favor of compliance therewith. If any provision clearly conflicts with any such law, the provisions of the law shall apply instead of the conflicting provision until such time as the conflicting provision can be appropriately amended.

WESTERN STATES INCOME SECURITY FUND
AMENDMENT NO. 5
TO THE WESTERN STATES INCOME SECURITY FUND
PENSION TRUST AGREEMENT
(effective January 1, 1991)

This is to certify that the Board of Trustees of the Western States Income Security Fund at a meeting on March 20, 2007, did adopt Amendment No. 5 to the Western States Income Security Fund's Pension Trust Agreement to further clarify the practices and policies of the Trust Fund with respect to employer delinquencies. This Amendment is effective March 20, 2007.

1. Under Article III, "Obligations Of Employers," Section A, "Payment Of Contributions," the first paragraph is hereby amended and a new second paragraph is added to read as follows:

"A. Payment of Contributions. All Employer contributions required by a Collective Bargaining Agreement shall be payable on the Due Date specified in paragraph B below, and shall be payable at such place where the Trust's principal place of business is located as the Board may from time to time specify; payment elsewhere shall be permitted only with the Board's prior written approval.

Contributions shall be made on all hours worked or paid for, as required by the terms of the collective bargaining agreement. Hours worked include overtime hours. Hours paid for generally include vacation, sick, holiday, and probationary hours, whether specifically included in the collective bargaining agreement or not."

* * *

The existing second paragraph is now the third paragraph.

2. Under Article III, "Obligations Of Employers," Section B, "Due Date," is hereby deleted and revised as follows:

"B. Due Date. The Due Date for an Employer's contributions for a month shall be the 15th day of the month immediately following the month for which the contributions are made."

3. Under Article III, "Obligations Of Employers," Section C, "Delinquent Contributions," is hereby deleted in its entirety and replaced with the following:

* * *

C. Delinquent Contributions. It is recognized and acknowledged that the regular, timely, and correct payment of Employer contributions is essential to the efficient and fair administration of the Trust and the maintenance of Plan benefits. If Employers do not make timely payments, the Trust loses the investment return it should have received, and incurs additional administrative expense in the form of letters, telephone calls, and other collection expenses. The Trust's collection expenses and loss of return on investment constitute damages arising from an Employer's default in making timely and correct payments, and these damages cannot be allowed to deplete the contributions promptly paid by other Employers. Therefore, the following provisions shall apply with respect to delinquent contributions:

(1) When Employer Considered Delinquent. Any Employer shall be considered to be delinquent if late payment or underpayment occurs, whether because it (a) fails to submit a contribution report form with the full contributions by the close of business on the Due Date, or (b) fails to submit contributions on behalf of all employees for whom contributions are required under its Collective Bargaining Agreement, or (c) fails to properly compute the contributions according to the applicable contribution formula, or (d) otherwise fails to meet its obligations hereunder. The Trustees shall undertake reasonable efforts to collect known delinquent contributions.

(2) Interest. Delinquent contributions shall accrue interest from the Due Date using the underpayment rate of Internal Revenue Code Section 6621 or such other reasonable rates as the Trustees from time to time establish.

(3) Liquidated Damages. If an Employer is delinquent in the payment of contributions, the delinquent Employer shall be liable, in addition, for liquidated damages of 1-1½% of the principal if late 1-30 days; 3% of the principal if late 31-60 days; and 1-1½% will accrue for each additional 30 days contributions are late, up to a maximum of 18% per annum, with minimum liquidated damages of twenty-five dollars ($25) per contribution period.

(4) Additional Liquidated Damages, Attorneys Fees and Court Costs. In the event the Trustees refer the delinquent Employer account to Trust Counsel for collection and a lawsuit is filed, the delinquent Employer shall be liable for additional liquidated

damages of up to a total of twenty percent (20%) on the unpaid contributions, interest on the unpaid contributions and reasonable attorney's fees and costs, audit fees and such other legal or equitable relief as may be appropriate.

(5) Waiver of Charges. The Trustees shall have the authority to waive all or part of the liquidated damages, interest, audit costs, attorney fees, and collection costs, for good cause shown."

4. Under Article III, "Obligations Of Employers," Section D, "Recordkeeping and Audits," the last two sentences of the second paragraph shall be deleted and replaced with the following:

"D. Recordkeeping and Audits.

* * *

In the event an examination of the Employer's records reveals that full and prompt payment of all sums due is not being made, the Trustees shall assess interest under Section C above and may assess audit costs against the Employer. If the Employer account is referred to Trust Counsel for collection and a lawsuit is filed, the Employer shall be liable for the audit fees and costs and the unpaid payroll audit liabilities will be treated as delinquent contributions for purposes of Section C(4) above. The Trustees shall have the authority, however, to waive all or part of such fees and costs for good cause shown."

* * *

5. Under Article III, "Obligations Of Employers," Section E, "Collection Actions," the second and third paragraphs are hereby deleted.

6. Under Article III, "Obligations Of Employers," Section F, "Mistaken Contributions," is hereby deleted in its entirety and replaced with the following:

"F. Mistaken Contributions. The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating Employer where the Employer has paid such contributions in error, as may be allowed by Section 403(c) of ERISA."

* * *

Executed this 26th day of July 2007.

Chairman

Secretary

WESTERN STATES INCOME SECURITY FUND
AMENDMENT NO. 4
TO THE WESTERN STATES INCOME SECURITY FUND
PENSION TRUST AGREEMENT
(effective January 1, 1991)

This is to certify that the Board of Trustees of the Western States Income Security Fund at a meeting on July 17, 2003, did adopt Amendment No. 4 to the Western States Income Security Fund Pension Trust Agreement in order to clarify existing language on Trustee fiduciary responsibility as a result of Department of Labor Field Assistance Bulletin (FAB 2002-2). This amendment is effective November 4, 2002, the date of FAB 2002-2.

Article VI, "Authority of Joint Board of Trustees," Section A, "General Authority," is hereby amended to add a second sentence to read as follows:

"A. General Authority

* * *

...Unless otherwise stated in this Trust Agreement, the Board will serve as fiduciaries in the creation, administration and design of any employee pension benefit plan hereunder and in the implementation of any action resulting from these functions or of any other general or specific power set out in this Trust Agreement."

Executed this 17th day of July 2003.

Chairman

Secretary

WESTERN STATES INCOME SECURITY FUND
AMENDMENT NO. 3
TO THE WESTERN STATES INCOME SECURITY FUND
PENSION TRUST AGREEMENT
(effective January 1, 1991)

This is to certify that the Board of Trustees of the Western States Income Security Fund during a conference call on June 4, 2003 adopted Amendment No. 3 to the Western States Income Security Fund Pension Trust Agreement to clarify the method of voting by the "unit method" and to provide for Trustee removal under specific circumstances. This amendment is effective June 4, 2003.

1. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph A, Number of Trustees, is hereby deleted and replaced as follows:

"A. Number of Trustees. There shall be up to eight Trustees, four of whom shall be Employer Trustees and four of whom shall be Union Trustees. This number may be changed from time to time by the Board of Trustees so long as the positions open to Employer and Union Trustees remain equal in number.

Each appointed Trustee may also designate in writing an alternate trustee to serve in his place and stead if the Trustee is absent from any meeting of the Board of Trustees. The alternate Trustee, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular Trustees. When designated to serve for a regular Trustee, and while serving, an alternate Trustee shall have all the powers and responsibilities of a regular Trustee."

2. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph D, Term of Office, is hereby deleted and replaced as follows:

"D. Term of Office. Each Trustee shall serve until termination of appointment, resignation, or death.

(1) Termination of Appointment. The appointment of an Employer Trustee may be terminated by unanimous action of the remaining Employer Trustees. The appointment of a Union Trustee may be terminated by the Union. The termination of a Trustee's appointment shall be effective upon the termination date specified in the written notice of termination, executed by the appropriate Employer Trustees or Union representative(s). Any such

notice shall be addressed to the Trustees and shall be mailed to the administrative office.

(2) Termination of Appointment for Conviction of a Crime. The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 411(a) of ERISA. If a Trustee who is so disqualified should continue to serve as a Trustee, in circumstances where the remaining Trustees have no knowledge of his disqualification, such service shall not invalidate any of the actions or decisions of the Trustees during the period of such service.

(3) Termination of Appointment for Mental Incapacity. The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

(4) Resignation of Appointment. A Trustee may resign appointment at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed to the administrative office."

3. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph H, Method of Voting, is hereby amended by deleting subparagraphs (2) - (4) and replacing them as follows:

"(2) Voting. Any action to be taken by the Trustees shall require a favorable vote by the Employer Trustees and by the Union Trustees according to the unit method of voting. The Employer Trustees shall have but one vote among them (which shall be determined by a majority of the Employer Trustees) and the Union Trustees shall have but one vote among them (which shall be determined by a majority of the Union Trustees)."

4. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph H, Method of Voting, subparagraph (5), Deadlock, is hereby redesignated subparagraph (3).

Dated this 17th day of July 2003.

Chairman

Secretary

WESTERN STATES INCOME SECURITY FUND
AMENDMENT NO. 2
TO THE WESTERN STATES INCOME SECURITY FUND
PENSION TRUST AGREEMENT
(effective January 1, 1991)

This is to certify that the Board of Trustees of the Western States Income Security Fund during a conference call on June 4, 2003 adopted Amendment No. 2 to the Western States Income Security Fund Pension Trust Agreement to modify the method of appointment for Trustees. This amendment is effective June 4, 2003.

1. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph B, Method of Appointment of Successor Union Trustees, is hereby deleted and replaced with the following:

> "B. Method of Appointment of Successor Union Trustees. Successor Union Trustees shall be appointed and serve at the pleasure of the Union. Each Union Trustee shall sign a document accepting appointment and agreeing to abide by the terms and provisions of this Pension Trust Agreement."

2. Article V, Appointment and Procedures of Joint Board of Trustees, paragraph C, Method of Appointment of Employer Trustees, is hereby deleted and replaced with the following:

> "C. Method of Appointment of Successor Employer Trustees. Successor Employer Trustees shall be appointed by unanimous action of the remaining Employer Trustees. Each Employer Trustee shall sign a document accepting appointment and agreeing to abide by the terms and provisions of this Pension Trust Agreement."

3. Article II, Definitions, paragraph C, Association, is hereby deleted.

4. Article II, Definitions, paragraphs D through I are hereby redesignated paragraphs C through H, respectively.

Dated this 17th day of July 2003.

[signature]
Chairman

R.E. Dunn [signature]
Secretary

**Amendment Number One To**
**Western States Income Security Fund**
**Pension Trust Agreement**
**(1991 Restatement)**

Effective July 1, 1992, Article VIII ¶ B is amended to read as follows:

VIII. FUNDING AND INVESTMENTS.

A. Funding and Investment Policies. The Board shall establish and carry out funding and investment policies and methods consistent with the objectives of the Trust and the requirements of ERISA, shall review such policies and methods at appropriate intervals and shall communicate them to any Fund Custodian and any Investment Manager.

B. Investment Decisions.

(1) The Board may itself invest and otherwise manage Plan assets, or it may delegate all or some of these management powers (including the power to acquire and dispose of Plan assets) either to a Fund Custodian or any other person, provided that such Fund Custodian or person qualifies as an Investment Manager under ERISA and acknowledges in writing that it is a fiduciary with respect to the Plan and Trust. The appointment, selection and retention of any Investment Manager, or the delegation of investment authority to a Fund Custodian shall be solely the responsibility of the Board, and shall be revocable by it at any time. Any person to whom management powers are delegated shall exercise its powers in accordance with the funding policies and any investment policies established by the Board, but shall have no responsibility for the establishment or adequacy of such policies.

(2) The Board may provide for participants and beneficiaries to make investment decisions with respect to their individual accounts, consistent with Section 404(c) of the Employee Retirement Income Security Act and regulations issued thereunder.

C. Investment Standards. Investment shall be prudent ones and shall be diversified so as to minimize the risk of large losses unless it is clearly prudent not to do so. They shall not be in conflict with ERISA's "prohibited transactions" provisions or its limitations with respect to the acquisition and holding of "employer securities" or "employer real property" (as those terms are defined in ERISA). No fiduciary shall cause the Trust to engage in transactions which violate these requirements and any instructions from others upon which any Fund Custodian must rely shall be consistent with these requirements.

**AMENDMENT NUMBER ONE TO**
**WESTERN STATES INCOME SECURITY FUND**
**PENSION TRUST AGREEMENT**
**(1991 Restatement)**

In accordance with paragraph A of Article IX, the undersigned Trustees hereby amend the above-named Trust Agreement as set forth on the following pages:

| Provision Added or Amended | Effective Date |
|---|---|
| Article VIII-B | July 1, 1993 |

EMPLOYER TRUSTEES

H. J. Riley

James H. Chamberlain

R. E. Dunn

_______________

Dated: 6-4, 1993

UNION TRUSTEES

_______________

_______________

_______________

Dennis Goldsmith

Dated: June 4, 1993

AMENDMENT NUMBER ONE TO
WESTERN STATES INCOME SECURITY FUND
PENSION TRUST AGREEMENT

In accordance with paragraph A of Article IX of the Pension Trust Agreement, the Board hereby amends paragraph C of Article V to read as follows effective September 1, 1991:

"C. Method of Appointment of Employer Trustees. All Employer Trustees shall be appointed by and serve at the pleasure of the existing Employer Trustees. Appointments and removals shall be made by written instrument delivered to the Board signed by a majority of the Employer Trustees. If a vacancy is not filled within sixty (60) days after notice to the incumbent Employer Trustees, the Association shall fill the vacancy within thirty (30) days after that sixty-day period expires; and if it fails to do so, any Trustee or Participant may petition the appropriate federal court to fill the vacancy. Any person appointed by the Association or a court due to failure of the Employer Trustees to fill the vacancy shall serve at the majority of Employer Trustee's pleasure the same as though appointed by them."

IN WITNESS WHEREOF, this Amendment is adopted this 20th day of August, 1991.

| EMPLOYER TRUSTEES | UNION TRUSTEES |
| --- | --- |
| [signature] | [signature] |
| James Chambers [signature] | [signature] |
| | [signature] |

JS44

(Rev. 07/89)

ORIGINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED 2007 OCT 17 PM 1:55 CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY: [signature] DEPUTY

**I (a) PLAINTIFFS**

Board of Trustees of Western States Income Security Fund

**DEFENDANTS**

Vanard Lithographers, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Los Angeles

**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** San Diego

**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Donaldson & Cornwell
15708 Pomerado Rd., Suite N-109
Poway, CA 92064
858-487-9420

**ATTORNEYS (IF KNOWN)**

unknown

'07 CV 2009 L CAB

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

29 U.S.C. Section 1132 and 29 U.S.C. Section 1145: contributions to employee benefit plan under ERISA

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury-Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prisoner Conditions

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☒ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND** $ 5,816.79 Check YES only if demanded in complaint: **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE 10-17-07 SIGNATURE OF ATTORNEY OF RECORD [signature]

PAID $350- 10/17/07 BH RCPT# 143633

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 143633 - BH**
*** * C O P Y * ***
**October 17, 2007**
**14:00:19**

**Civ Fil Non-Pris**
USAO #.: 07CV2009 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.: $350.00 CK
Check#.: BC# 043839

**Total-> $350.00**

FROM: CIVIL FILING
WESTERN STATES V. VANARD